Staci Jennifer Riordan, SBN 232659
Jessica N. Walker, SBN 275398
**NIXON PEABODY LLP**
One California Plaza
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071
Telephone: 213.629.6000
Facsimile: 213.629.6001
sriordan@nixonpeabody.com
jwalker@nixonpeabody.com

Attorneys for Defendant
H & M HENNES & MAURITZ LP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNICOLORS, INC., a California Corporation,<br><br>          Plaintiff,<br><br>     vs.<br><br>H & M HENNES & MAURITZ LP, a New York Limited Partnership, and DOES 1-20, inclusive,<br><br>          Defendants. | Case No.: 2:16-cv-02322<br><br>Hon. André Birotte, Jr.<br><br>**DEFENDANT H & M HENNES & MAURITZ LP'S OPPOSITION TO PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR ADJUDICATION; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Filed Concurrently with Declaration of Staci Jennifer Riordan; Declaration of Chelsea Wharton; Declaration of Xiaomin Qian; Statement of Genuine Disputes of Material Fact; Objections to Evidence; [Proposed] Order]<br><br>Date:          May 22, 2017<br>Time:          10:00 a.m.<br>Ctrm.:          7B<br><br>Pretrial Conf.:     August 7, 2017<br>Trial Date:          August 29, 2017 |

1
2

**Table of Contents**

Page

3      I.      INTRODUCTION ................................................................. 1

4      II.     STATEMENT OF FACTS .................................................... 1

5              A.    H&M Operates Retail Stores in the United States.................. 1

6              B.    Unicolors is a Domestic Textile Converter........................... 1

7              C.    H&M's Garments Bear a Design that was Independently Created ...... 2

8              D.    H&M Did Not Design or Manufacture the Accused Garments............ 3

9              E.    H&M Lost Money on Sales of the Accused Garments ................ 3

10     III.    STANDARD FOR MOTION FOR SUMMARY JUDGMENT ...................... 3

11     IV.     THE FABRIC DESIGN WAS INDEPENDENTLY CREATED AND IS
               COVERED BY A VALID COPYRIGHT REGISTRATION ......................... 4

12             A.    Xue Xu was Independently Created and Protected by Copyright ......... 4

13             B.    The Accused Garments Contain the Design Xue Xu........................... 5

14     V.      H&M IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT.................... 6

15     VI.     UNICOLORS CANNOT PROVE THAT H&M ACCESSED EH101 ........... 6

16             A.    Plaintiff Has Not Established Facts Demonstrating Direct Access ....... 7

17             B.    Plaintiff Has Not Established Access By A "Chain of Events" ............ 7

18             C.    Plaintiff Has Not Shown Access By Widespread Dissemination.......... 7

19             D.    Unicolors Cannot Meet Its Access Burden via  Striking Similarity.... 11

20     VII.    EH101 AND XUE XU ARE NOT SUBSTANTIALLY SIMILAR.............. 12

21             A.    The Unprotected Elements Of The Shape Pattern Must Be Filtered
22                   Out Before It Is Compared With The Garments ................................. 13

23             B.    EH101's Standard And Stock Elements Are Not Protectable ............ 15

24             C.    Unicolors Relied Upon And Borrowed From Ancient And Public
                     Domain Patterns In Creating The Shape Pattern ................................ 15

25             D.    The Use Of Triangles, Diamonds, "X" Symbols, Pyramids, and
26                   Circles Are Scènes à Faire and Unprotectable In Fabric Patterns ....... 17

27     VIII.   EH101 IS NOT PROTECTABLE AS A COMBINATION OF
               OTHERWISE UNPROTECTABLE ELEMENTS ......................................... 18

28

i

IX.   MANUFACTURING HAS NO BEARING ON THE SUBSTANTIAL
      SIMILARITY ANALYSIS ................................................................ 19

X.    COMPARISON REVEALS EH101 AND XUE XU ARE NOT
      SUBSTANTIALLY SIMILAR ........................................................ 20

XI.   THE WORKS ARE NOT VIRTUALLY IDENTICAL ................................. 23

XII.  H&M CANNOT BE SECONDARILY LIABLE FOR
      EXTRATERRITORIAL INFRINGEMENT ...................................... 23

XIII. UNICOLORS' ALLEGED DAMAGES ........................................... 24

XIV.  H&M'S FEES .................................................................................. 25

XV.   CONCLUSION ................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Aliotti v. R. Dakin & Co.*,
  831 F.2d 898 (9th Cir. 1987) ............................................................. 15

*Apple Computer Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ............................................................. 14

*Art Attacks Ink, LLC v. MGA Entertainment Inc.*
  ("*Art Attacks*"), 581 F.3d 1138 (9th Cir. 2009) ........................... 7, 8, 9, 10

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp. 2d 1043 (C.D. Cal. 2010) ...................................... 6, 11, 23

*Bethea v. Burnett*,
  2005 WL 1720631 (C.D. Cal. June 28, 2005) ................................... 12

*Bill Diodato Photography, LLC v. Kate Spade, LLC*,
  388 F. Supp. 2d 382 (S.D.N.Y. 2005) ............................................... 17

*Brown Bag Software v. Symantec Corp.*,
  960 F.2d 1465 (9th Cir. 1992) ........................................................... 14

*Cavalier v. Random House*,
  297 F.3d 815 (9th Cir. 2002) ............................................................. 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................. 4

*Columbia Pictures Indus., Inc. v. Fung*,
  2009 WL 6355911 (C.D. Cal. Dec. 21, 2009), *aff'd in part as modified*, 710
  F.3d 1020 (9th Cir. 2013) ................................................................... 24

*Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*,
  61 F.3d 696 (9th Cir. 1995) ................................................................. 5

*Data Eas USA v. Epyx, Inc.*,
  862 F.2d 204 (9th Cir. 1988) ............................................................. 14

*Ent'mt Research Grp. V. Genesis Creative Grp.*,
  122 F.3d 1211 (9th Cir. 1997) ........................................................... 13

iii

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012) ..................................................................14

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991)..........................................................................................18

*Hamil America, Inc. v. GFI*,
    193 F.3d 92 (2d Cir. 1999) ...............................................................................5

*Kamar International v. Russ Berrie & Co.*,
    657 F.2d 1059 (9th Cir. 1981) .........................................................................7

*L.A. News Serv. v. Reuters Television Int'l, Ltd.*,
    149 F.3d 987 (9th Cir. 1998) ...........................................................................24

*L.A. Printex Indust. Inc. v. Aeropostale, Inc.*,
    676 F.3d 841 (9th Cir. 2012) ...................................................................passim

*Lambert Corp. v LBJC Inc.*,
    2014 WL 2737913 (C.D Cal. June 16, 2014)....................................................12

*Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*,
    345 F.3d 1140 (9th Cir. 2003) ....................................................................5, 19

*Landsberg v. Scrabble Crossword Game Players, Inc.*,
    736 F.2d 485 (9th Cir. 1984) ...........................................................................17

*Lilith Games (Shanghai) Co. v. uCool, Inc.*,
    2015 WL 4149066 (N.D. Cal. July 9, 2015) ...............................................3, 5

*Meta–Film Assoc. v. MCA, Inc.*,
    586 F. Supp. 1346 (C.D. Cal. 1984)..................................................................7

*Norse v. City of Santa Cruz*,
    629 F.3d 966 (9th Cir. 2010) ...........................................................................4

*Perfect 10, Inc. v. Yandex N.V.*,
    2013 WL 4777189 (N.D. Cal. Sept. 6, 2013)....................................................24

*Peter Starr Prod. Co. v. Twin Continental Films, Inc.*,
    783 F.2d 1440 (9th Cir. 1986) .........................................................................24

*Polar Bear Prods., Inc. v. Timex Corp.*,
    384 F.3d 700 (9th Cir. 2004) ...........................................................................25

iv

*Roth Greeting Cards v. United Card Co.*,
    429 F.2d 1106 (9th Cir. 1970) ...................................................................5

*Satava v. Lowry*,
    323 F. 3d 805 (9th Cir. 2003) .............................................14, 18, 19

*Star Fabrics, Inc. v. The Wet Seal, Inc., et. al.*,
    Dkt. No. 23, p. 3 (C.D. Cal. Mar. 27, 2015)......................................12

*Stratchborneo v. Arc Music Corp.*
    357 F. Supp. 1393 (S.D.N.Y 1973) ....................................................11

*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*,
    24 F.3d 1088 (9th Cir. 1994) ..............................................................24

*Testa v. Janssen*,
    492 F. Supp. 198 (W.D. Pa. 1980) .....................................................11

*Three Boys Music Corp. v. Bolton*,
    212 F.3d 477 (9th Cir. 2000) .............................................................6, 7

*Twentieth Century-Fox Film Corp. v. MCA, Inc.*,
    715 F.2d 1327 (9th Cir. 1986) ............................................................13

*Walker v. Viacom Int'l, Inc.*,
    2008 WL 2050964 (N.D. Cal. May 13, 2008), *aff'd*, 362 F. App'x 858 (9th
    Cir. 2010) ..............................................................................................6

**FEDERAL STATUTES**

17 U.S.C. § 505..........................................................................................25

**RULES**

Fed. R. Civ. P. 56(f) ....................................................................................4

Fed. R. Civ. P. 902......................................................................................4

**REGULATIONS**

37 C.F.R. § 202.1 .......................................................................................15

**OTHER AUTHORITIES**

4-13 M. Nimmer & D. Nimmer, *Nimmer on Copyright*
    ("Nimmer") (2015) ............................................................................4, 24

Mary Campbell Wojcik, *The Antithesis of Originality: Bridgeman, Image
    Licensors, and the Public Domain*, 30 Hastings Comm. & Ent. L.J. 257, 267
    (2008)....................................................................................................15, 16

**TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 22, 2017, at 10:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled court, located at 350 W. 1st St., Los Angeles, California, 90012, Defendant H & M Hennes & Mauritz LP ("H&M" or "Defendant") will and does hereby move the Court to deny Plaintiff's motion for summary judgment and, on the ground that there is no genuine issue as to any material fact, instead find that H&M is entitled to summary judgment, or alternatively, summary adjudication as to one or more of Plaintiff's claims, as a matter of law.

Plaintiff's first claim for relief for direct copyright infringement fails for the following reasons:

- Defendant has undisputed evidence that the accused design was the result of independent creation.
- Plaintiff cannot establish that: (1) the accused design is strikingly similar to the copyrighted material; or (2) the accused design the substantially similar to the copyrighted material <u>and</u> that Defendant had access to the copyrighted material.

Plaintiff's second claim for relief for contributory copyright infringement fails for the following reason:

- The predicate sales took place outside the United States and, as a matter of law, cannot support a claim for contributory infringement.

Plaintiff's third claim for relief for vicarious copyright infringement fails for the following reason:

- The predicate sales took place outside the United States and, as a matter of law, cannot support a claim for vicarious infringement.

///

///

///

1

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-3**

Pursuant to Local Rule 7-3, the parties met and conferred on April 17, 2017 to discuss the basis of their anticipated motions.  Pursuant to this Court's standing order, and prohibition against cross-motions, the parties agreed that Plaintiff would be the moving party, and Defendant would assert its motion for summary judgment by way of its opposition.

**OPPOSITION AND MOTION**

This opposition and motion is based upon this Notice; the attached Memorandum of Points and Authorities; the accompanying Declaration of Staci Jennifer Riordan; [Proposed] Order; all of the pleadings and papers filed herein; and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

Dated:  May 1, 2017                    NIXON PEABODY LLP


                                  By   */s/ Staci Jennifer Riordan*
                                       Staci Jennifer Riordan
                                       Jessica N. Walker
                                       Attorneys for Defendant
                                       H & M HENNES & MAURITZ, LP

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3    This case is very simple.  H&M did not copy Unicolors' design, EH101.  The

4  design on the fabric used for H&M's garments, called "Xue Xu," was copyrighted by

5  the supplier who created it.  Moreover, H&M does not design or manufacturer any of

6  the products in its stores, so not only did it not access EH101, it would have no reason

7  to access it.

8    And it may surprise the Court to learn that the foregoing is undisputed by

9  Unicolors.  Nonetheless, seeing H&M as a deep pocket, Unicolors speciously persists

10 with its claim.  And as serial copyright trolls tend to do, when Unicolors realized it

11 has no evidence to support any of its claims, it started (falsely) accusing H&M of

12 wrongdoing, perhaps hoping that sideshow will distract the Court.  Don't reward

13 Unicolors' improper conduct or be fooled by smoke and mirrors.

14   The undisputed facts before the Court establish, as a matter of law, that all three

15 of Plaintiff's claims fail and that summary judgment should be entered in Defendant's

16 favor, *in toto*.

17 **II.   STATEMENT OF FACTS**

18    **A.    H&M Operates Retail Stores in the United States**

19   H & M Hennes & Mauritz LP ("H&M"), based in New York, owns and

20 operates numerous retail stores across the United States that sell fashion-forward

21 clothing for men, women and children.  Statement of Genuine Disputes of Material

22 Facts ("SGDMF") 28.  H&M does not design any of the products in its stores.

23 SGDMF 29.  H&M does not manufacture any of the products in its stores.  SGDMF

24 30.  H&M's primary function is to operate its stores in a way to support its sales

25 associates to maximize sales, both in volume and units.  SGDMF 31.

26    **B.    Unicolors is a Domestic Textile Converter**

27   Unicolors, Inc. ("Unicolors"), based on Los Angeles, creates designs for use on

28 textiles and garments.  Plaintiff's Statement of Undisputed Facts ("SUF") SUF 1.

1

1  Unicolors' designer, Hannah Lim, claims that she created a design titled EH101, that
2  is the subject of this suit.  SUF 9, 14.  Unicolors obtained a copyright for this design.
3  SUF 8.  Unicolors had fabric made that contained the EH101 design.  SUF 10.

4       Unicolors sent an electronic copy of EH101 to a supplier, located in China so
5  that it could produce production yardage.  SGDMF 51.  Specifically, Unicolors ordered
6  25,650 yards of EH101 fabric from its trusted vendor in Shanghai, China.  SGDMF
7  52.  The fabric was shipped directly from the manufacturer in Shanghai, by boat, to
8  Unicolors in Los Angeles.  SGDMF 53.  There is no evidence that any of this fabric
9  was distributed in China, or not otherwise shipped directly to Unicolors as ordered.
10  SGDMF 54.  Plaintiff has not presented evidence of any other orders that it placed for
11  EH101 fabric.

12       Thereafter through February 2012, Unicolors re-sold this EH101 yardage,
13  which totals approximately 47,000 yards to its customers, all of which were located in
14  Los Angeles.  SGDMF 55.  All shipments were made to addresses in Los Angeles.
15  SGDMF 56.  Approximately 80% of these sales (or about 38,500 yards) were to a
16  single company, located in Los Angeles.  *Id.*

17       In 2013, Unicolors sold 136 yards of EH101 to a company in Mexico, this
18  yardage was either picked up in Los Angeles, or shipped to Mexico.  SGDMF 57.
19  Unicolors CEO and designated 30(b)(6) witness testified that this was closeout
20  yardage, meaning Unicolors was getting rid of fabric that it couldn't otherwise timely
21  sell and it sold it for deeply discounted prices.  *Id.*  In 2014, Unicolors made a single
22  sale of 495 yards to a company in Dallas, Texas.  SGDMF 58.  Unicolors CEO and
23  designated 30(b)(6) witness was not aware of any other sales of EH101 fabric.
24  SGDMF 59.

25  **C.   H&M's Garments Bear a Design that was Independently Created**

26       In or around 2015, H&M sold an Oliver Jacquard wrap jacket and a W Rio skirt
27  ("Accused Garments") made from fabric designed by Shaoxing DOMO Apparel Co,
28  Ltd. ("DOMO").  SGDMF 37.  The jacket and skirt are the subjects of this lawsuit.

2

1   DOMO has a copyright registration covering the design ("Xue Xu") found on
2   the jacket and skirt.  SGDMF 38.  The copyright was issued by the Copyright Bureau
3   of Zhejiang Province on or about September 22, 2015.  *Id.*  China is a signatory to the
4   Berne Convention.   See *Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL
5   4149066, at *1 (N.D. Cal. July 9, 2015).

6   Xue Xu was independently created by Chinese designer, Xiaomin Qian, and is
7   an original work of authorship.  SGDMF 39.  Ms. Qian confirmed that she created the
8   design.   SGDMF 40.   Ms. Qian identified her source inspiration, including images
9   from a public domain pattern idea book, which she adapted in creating the design.  *Id*.
10  Ms. Qian further confirmed that she did not see EH101 and, of course, did not copy
11  EH101 or otherwise use EH101 to create Xue Xu.  SGDMF 41.

12  ### D.   H&M Did Not Design or Manufacture the Accused Garments

13  The jacket and skirt were designed in Sweden, and manufactured by two
14  companies in China, Real Hope International Limited and Hempel China Limited.
15  SGDMF 42.  The manufacturers then shipped the Accused Garments for sale at H&M.
16  SGDMF 44.   The manufacturers also shipped finished garments to other companies,
17  in other countries, for sale in strictly foreign stores.  SGDMF 76-77.

18  At no time did H&M, DOMO, or the designers in Sweden have direct access to
19  EH101.   SGDMF 46-49.   Nor is there any indirect evidence that demonstrates that
20  H&M, DOMO, or the designers had access to EH101.  SGDMF 50.

21  ### E.   H&M Lost Money on Sales of the Accused Garments

22  H&M lost approximately $183,239 on sales of the jacket and skirt. SGDMF 78.
23  Alternatively, if allocated store expenses are not deducted, H&M realized profits of
24  approximately $33,750 from its use of the fabric design.  *Id*.

25  ## III.   STANDARD FOR MOTION FOR SUMMARY JUDGMENT

26  The rule on summary judgment is well-understood and non-controversial:
27  Summary judgment is proper where "there is no genuine issue as to any material fact
28  and … the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.

3

1    ("Rule") 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The Court
2    may also enter judgment in favor of the nonmovant if there is no genuine dispute as to
3    any material fact, and the non-moving party is entitled to judgment as a matter of law.
4    *See* Rule 56(f); *Norse v. City of Santa Cruz*, 629 F.3d 966, 971, n.2 (9th Cir. 2010).
5    Here, the parties have agreed that Unicolors would be the moving party and, as
6    recommended by the Court's standing rule, H&M would present its request for
7    summary judgment in its response.  As shown below, there are no disputes of material
8    fact and H&M is entitled to judgment, as a matter of law, on all claims.

9 | 10    **IV.    THE FABRIC DESIGN WAS INDEPENDENTLY CREATED AND IS COVERED BY A VALID COPYRIGHT REGISTRATION**

11    Independent creation is an absolute defense to an allegation of copyright
12    infringement.   Here, the evidence of independent creation is overwhelming, and
13    undisputed, and entitles H&M to judgment as a matter of law.

14    **A.    Xue Xu was Independently Created and Protected by Copyright**

15    Xiaomin Qian independently created Xue Xu (falling snow), which is protected
16    by a copyright registration issued by the Zhejiang Provincial Government on or about
17    September 22, 2015.  SGDMF 38-39.  DOMO is the registered owner of the copyright
18    for Xue Xu.  SGDMF 38.  DOMO has provided H&M with a copy of its copyright
19    registration.   Additionally, for purposes of this case, the copyright registration was
20    certified by the US Embassy in Shanghai as an official government document, making
21    it admissible as such.  Rule 902; Riordan Decl., Ex. 42-43.

22    A copyright registration certificate constitutes prima facie evidence in favor of
23    the holder that the design has the following: "(1) originality in the author; (2)
24    copyrightablitity of the subject matter; (3) a national point of attachment of the work,
25    such as to permit a claim of copyright; [and] (4) compliance with applicable statutory
26    formalities."  4-13 M. Nimmer & D. Nimmer, *Nimmer on Copyright* ("Nimmer") §
27    13.01 (2015); Dkt. No. 21, at 5.  Because the copyright registrations were filed within
28    5 years of creation, the registrations have a presumption of validity, meaning that the

4

fabric used in the H&M garments is presumed to be a work of original authorship and there was no copying.

A defendant's valid copyright registration is prima facie evidence that the protected design was independently created. *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1109 (9th Cir. 1970) ("originality necessary to support a copyright merely calls for *independent creation*"); *Lamps Plus, Inc. v. Seattle Lighting Fixture Co*., 345 F.3d 1140, 1144 (9th Cir. 2003) (copyright certificate constitutes valid evidence of the originality and ownership of the design it protects).

This is equally true for copyrights issued by the Chinese government, which are protected and enforceable in the United States pursuant to the Berne Convention. *Lilith Games*, 2015 WL 4149066, at *1 (Chinese copyright holder brought "infringement claim under the Berne Convention, an international agreement governing copyright, to which both the United States and China are signatories"); *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995) (Berne Convention mandates "a policy of national treatment in which copyright holders are afforded the same protection in foreign nations that those nations provide their own authors.")

Unicolors has presented no evidence, nor could they, to rebut the presumption of validity of DOMO's copyright.[1]  *Lamps Plus*, 345 F.3d at 1144 (opposing party must offer some evidence or proof to rebut presumption of validity); *Hamil America, Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999) (same).

### B.   The Accused Garments Contain the Design Xue Xu

DOMO used Xue Xu to design and manufacture the fabric that was used to make the Accused Garments.  SGDMF 37-38.   This fabric was then used by Real

---

[1] Unicolors' argument that Xue Xu is a derivative of EH101 is puzzling.  DOMO has a copyright registration for Xue Xu, the designer attested that she created it and, unlike Unicolors, provided her source inspiration.  SGDMF 38-41.  Further, Xue Xu's designer denied seeing EH101, copying it, or otherwise using it to help create Xue Xu. *Id.*  This evidence, and the presumption of validity, is buttressed by expert testimony into the origins of Xue Xu.  Report of Expert Robin Lake ("Lake Report"), ¶¶ 8-19.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:16-CV-02322

1    Hope and Hempel to manufacturer the Accessed Garments.  SGDMF 42.

2         Accordingly, summary judgment must be entered in H&M's favor because

3    there is undisputed evidence of independent creation.  *Walker v. Viacom Int'l, Inc.*,

4    2008 WL 2050964, at *9 (N.D. Cal. May 13, 2008) (summary judgment appropriate

5    where defendant shows independent creation), *aff'd*, 362 F. App'x 858 (9th Cir. 2010).

6    **V.    H&M IS NOT LIABLE FOR COPYRIGHT INFRINGEMENT[2]**

7         Assuming, *arguendo*, that the Accused Garments are not made from fabric

8    containing DOMO's copyrighted design, which they are, Unicolors' claims still fail

9    because there is no evidence of access or substantial similarity.  Accordingly, H&M is

10   independently entitled to summary judgment on this ground as well.

11   **VI.    UNICOLORS CANNOT PROVE THAT H&M ACCESSED EH101**

12        To succeed on its copyright infringement claim, Unicolors must prove that

13   H&M accessed EH101. *Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp.

14   2d 1043, 1052 (C.D. Cal. 2010); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481

15   (9th Cir. 2000).  Here, there is no evidence of "access" and Unicolors' infringement

16   ─────────────────────

17   [2] Unicolors has submitted a copyright registration that purports to include EH101,
     among other designs.  As discussed herein, H&M submits that the evidence is

18   sufficient for judgment to be entered in H&M's favor or, at the least, for summary
     judgment to be denied as to both parties.  For purposes of this opposition and motion

19   only, H&M will not dispute that EH101 is protected by copyright VA 1-770-400.  If
     the Court is inclined to grant summary judgment for Plaintiff, H&M respectfully

20   moves, pursuant to Rule 56(d) for additional time to conduct discovery into source
     material and computer files that relate to the alleged creation of EH101 and other

21   designs covered by this registration, as it appears Unicolors has withheld key evidence
     on these very points.

22        To wit, after Unicolors' 30(b)(6) deposition, counsel for Unicolors said it could
     not produce files discussed by the deponent showing *inter alia*, source material for

23   EH101, and records relating to the other designs covered by Registration VA 1-770-
     400 and its communications with the suppliers who produced the initial yardage of

24   EH101 (which invoices are also curiously missing) due to a computer virus.
     Declaration of Staci Riordan ("Riordan Decl."), ¶ 14.  These records likely show (or

25   disprove) whether all designs covered by VA 1-770-400 were created by the same
     author and all were first published at the same time.  37 C.F.R. § 202.3(b)(4)(i)(B).

26   Contrary to counsel's statement, the designer of EH101 claimed that the files were on
     her desktop when she left the company, after the computer virus occurred, and she

27   believed that they had been recovered.  SGDMF 80.  Those files are responsive to
     numerous discovery requests, bear upon the validity of Copyright VA 1-770-400, and

28   should have been produced.  Riordan Decl., ¶ 14.  H&M requests that the files be
     produced and submitted to the Court, prior to any ruling in favor of Unicolors.

1   claim therefore fails as a matter of law.[3]  *Three Boys*, 212 F.3d at 481.

2        Access may be shown by proving the defendant had an "opportunity to view or

3   copy" the design. *Kamar International v. Russ Berrie & Co.*, 657 F.2d 1059, 1062

4   (9th Cir. 1981). To satisfy this standard, a plaintiff must show more than that the

5   defendant had a "bare possibility" of access; rather, the plaintiff must show that the

6   defendant had a "reasonable possibility" to view the plaintiff's work. *Meta–Film*

7   *Assoc. v. MCA, Inc.*, 586 F. Supp. 1346, 1355 (C.D. Cal. 1984).   Plaintiff has

8   presented no evidence of direct access, and must therefore rely on circumstantial

9   evidence to show access.  SGDMF 45-47.  The circumstantial evidence, either via a

10  chain of events or widespread dissemination, does not show that H&M (or even

11  DOMO, or the Garment Designers), accessed EH101. *Three Boys*, 212 F.3d at 482.

12       **A.    Plaintiff Has Not Established Facts Demonstrating Direct Access**

13       Plaintiff has produced no evidence that H&M had direct access to EH101.

14  Plaintiff cannot establish such direct access, and does not appear to claim otherwise.

15  Mtn at 13.

16       **B.    Plaintiff Has Not Established Access By A "Chain of Events"**

17       It is also undisputed that H&M did not access EH101 via chain of events.  Mtn

18  *passim*; SGDMF 50.  Plaintiff has presented no facts, as there are none, that there is a

19  "chain of events that link the plaintiff's work and the defendant's access."  *Art Attacks*

20  *Ink, LLC v. MGA Entertainment Inc.* ("*Art Attacks*"), 581 F.3d 1138, 1143 (9th Cir.

21  2009).  Plaintiff cannot establish access via chain of events.

22       **C.    Plaintiff Has Not Shown Access By Widespread Dissemination**

23       To prove access by widespread dissemination, Unicolors must prove that

24  EH101 was so widely sold that H&M must have seen it.  In order to do so, Unicolors

25  must present undisputed evidence that provides context **and** quantification of the

26

27  ───────────────
    [3]  Plaintiff might also establish infringement by showing EH101 and Xue Xu are
28  "strikingly similar."  As discussed below in Section IV.D, Unicolors cannot meet that
    heightened burden on the evidence here.

Plaintiff's alleged sales and sampling (i.e., dissemination) so that it is probable that the defendant copied it in creating its design.  *L.A. Printex Indust. Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 847-48 (9th Cir. 2012).

For example, in *Art Attacks,* the plaintiff contended that there was widespread dissemination of the work at issue because: (1) the work was displayed in retail stores and at Plaintiff's booth at a county fair where millions attended; (2) the work was printed on T-shirts, "which serve as 'walking billboards,'" of which 2,000 units were sold per year; and (3) the work was available to view and purchase on the Internet. 581 F.3d at 1144-1145. The court disagreed, found the above described dissemination was not widespread, held that plaintiff failed to show "more than a 'bare possibility'" of access and granted summary judgment in favor of the defendant. *Id.* at 1145.

Similarly, in *Rice v. Fox Broadcasting Co.,* the court held that 17,000 videos sold over a 13-year period "cannot be considered widely disseminated," even though the plaintiff showed that there was a great deal of publicity surrounding the release of the video, various niche publications ran stories about the video, and the video was featured on *Entertainment Tonight. Rice,* 330 F.3d 1170, 1178 (9th Cir. 2003).

Additionally, in *Jason v. Fonda,* the plaintiff alleged that she sold 2,000 copies of her book nationwide, with somewhere between 200-700 of those units sold in Southern California, where the defendants were located. 526 F. Supp. 774 (C.D. Cal. 1981) *aff'd*, 698 F.2d 966 (9th Cir. 1982).  The court held that extent of distribution "creates no more than a 'bare possibility' that defendants may have had access to plaintiff's book", and that such bare possibility was insufficient to create a genuine issue of fact.  *Fonda*, 526 F. Supp. at 776–77.  Without evidence of access, summary judgment was entered in favor of defendants, and affirmed on appeal.  *Id.*

### 1.    No Facts Showing Widespread or Relevant Dissemination

To show access by widespread dissemination, the Motion alleges that:

- Unicolors sold over 85,000 yards of fabric between February 2011 and 2015[4]

- DOMO is located approximately 100 miles from a company that manufactured EH101 fabric for Unicolors; and

- It is common for US companies to send fabric to China to be converted into finished garments.

Even if the evidence supported these contentions, which it does not, they are not sufficient to show anything more than a "bare possibility" that H&M (or DOMO, or the Garment Designers) viewed EH101, which is insufficient to show access. *Art Attacks*, 581 F.3d at 1143 (bare possibility legally insufficient to establish access via wide spread dissemination).

### 2.   H&M Did Not Access EH101 via Widespread Dissemination

It is undisputed that H&M did not design or manufacture the Accused Garments.  SGDMF 42.  H&M had no role in selecting the fabric design to be used in the Accused Garments. SGDMF 43.  Unicolor's bare allegation that because H&M has retail stores in Los Angeles, where Unicolors is located, H&M could have seen EH101 fabric is conclusory and irrelevant, not to mention false.  *Rice,* 330 F.3d at, 1178; *Fonda*, 526 F. Supp. at 776–77. Thus, Unicolors' claim that H&M accessed EH101 via wide spread dissemination fails.

### 3.   DOMO Did Not Access EH101 via Widespread Dissemination

Even if Unicolors' three allegations of wide spread dissemination were true, which they are not, they do not show a reasonable possibility that DOMO viewed EH101.[5]  There is no evidence that Unicolors' fabric supplier distributed any EH101

---

[4]  The facts are contrary, approximately 48,000 yards were sold, almost all to Los Angeles based customers, and almost all between March 2011 and February 2012. SGDMF 55-58.

[5]  DOMO is not a party to this action, nor could it be.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 751, (2014) (discussing requirements for personal jurisdiction over foreign entity); see also *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1093 (9th Cir. 1994) ("undisputed axiom that United States copyright law has no extraterritorial application").   Whether DOMO accessed EH101 is irrelevant to

9

fabric inside China.  The only evidence is that Unicolors ordered 25,000 yards of EH101 from a single company, that was shipped, by boat, from Shanghai to Los Angeles. SGDMF 52.  Nor is there any evidence how much, if any, EH101 fabric was disseminated in China.  See, e.g., *LA Printex,* 676 F.3d at 852.  The fact that two companies are 100 miles apart, or even closer, is irrelevant to show access without evidence as to the volume of product that was disseminated (here, there is no evidence any volume of product disseminated in China).  *Rice,* 330 F.3d at 1178; *Fonda*, 526 F. Supp. at 776–77.

Finally, it is rank speculation that a US based company purchased EH101 from Unicolors, sent that fabric to China, and DOMO somehow viewed it.  Plaintiff has not produced any evidence to support such speculation.    In fact, certain of Unicolors' customers confirmed they did not send EH101 to China, or to H&M.  SGDMF 81.

The evidence does not support a "reasonable possibility" that DOMO viewed EH101.  Even if it was theoretically "possible" that it occurred, such bare possibility is legally insignificant.  *Art Attacks*, 581 F.3d at 1143; *LA Printex*, 676 F.3d at 852.  Moreover, any such "possibility" is directly refuted by the actual evidence, which is that DOMO's designer, Ms. Qian, did not see EH101, before creating Xue Xu. Any contention that DOMO had access to EH101 fails, as matter of law and fact.

### 4.    The European Garment Designers Did Not Access EH101 via Widespread Dissemination

Lastly, the Motion may be construed to claim that the designers of the accused jacket and accused skirt somehow saw EH101.[6]  Mtn at 14.  That claim likewise fails

___

copyright infringement allegations against H&M.  Nonetheless, because Unicolors seems to be alleging that DOMO saw EH101 in creating Xue Xu, H&M addresses those allegations here.

[6] Like DOMO, the designer of the Accused Garments is a foreign entity, and is not a party to this action, nor could it be.  See cases cited in n.6, *supra*. Therefore whether they accessed EH101 is irrelevant to Unicolors copyright infringement allegations against H&M.  Nonetheless, since Unicolors seems to be alleging that they could have seen EH101 because EH101 was allegedly widespread, H&M addresses those allegations here.

1   as there is no evidence that EH101 was distributed in Europe, specifically Sweden,

2   where those designers are located.  SGDMF 65.

3       Unicolors has not produced any evidence showing it was reasonably possible

4   that H&M, or even DOMO or the European designers of the Accused Garments had

5   access or otherwise viewed EH101.   Accordingly, Unicolors' claim of access via

6   widespread dissemination fails.

7       **D.**    **Unicolors Cannot Meet Its Access Burden via  Striking Similarity**

8       In rare occasions, courts allow a plaintiff to avoid proving access based on the

9   striking similarity doctrine.  This is not such a case.

10       The rule of *striking similarity* applies only when, "as a matter of logic, the only

11   explanation [for the similarities] between the works must be 'copying rather than

12   coincidence, independent creation, or prior common source.'"   *Bernal*, 788 F. Supp.

13   2d at 1052 (*quoting* Nimmer § 13.02[B]). Here, there is undisputed evidence of

14   independent creation of Xue Xu - the copyright and Ms. Qian's sworn testimony -

15   and, thus, copying is not and cannot be the only explanation.[7]

16       Where, like here, a defendant has a copyright registration, which is *prima facie*

17   evidence its work was independently created and original, the plaintiff is precluded

18   from relying on the doctrine of striking similarity as an alternative to pleading access.

19   *Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D. Pa. 1980) (works properly not found

20   strikingly similar when perceived similarities explained by independent creation);

21   *Stratchborneo v. Arc Music Corp*. 357 F. Supp. 1393, 1403 (S.D.N.Y 1973) (striking

22   similarity only demonstrable when defendant's work not a result of independent

23   creation).

24

25   ───────────────

    [7]  H&M could not find any cases where a court found there was striking similarity
when the accused infringing item was protected by a copyright registration.  *See*, *e.g.*,
26   *Unicolors, Inc. v. Urban Outfitters, Inc.*, 2017 WL 1208459, at *5 (9th Cir. Apr. 3,
2017); *Lambert*, at *5 (C.D Cal. June 16, 2014); *Three Boys*, 212 F. 3d at 485; *Baxter*
27   *v. MCA*, 812 F.2d 421,423-24 (9th Cir. 1987).  This makes sense as the presence of a
copyright for the accused work is *prima facie* evidence of independent creation, which
28   undercuts the assumption on which the rule of striking similarity is built.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES       CASE NO. 2:16-CV-02322

Even if a defendant cannot present a copyright registration – which is not the case here – a court may still conclude that the defendant's design was independently created and thus require the plaintiff to prove access. *Bethea v. Burnett*, 2005 WL 1720631, at *15 (C.D. Cal. June 28, 2005). In the Ninth Circuit, to determine whether it is likely that the defendant's design was independently created, courts examine whether: (i) a prevalence of patterns containing similar subject matter exist in the public domain; (ii) the works contain stock elements; and (iii) where the works contain distinct differences. *Lambert Corp. v LBJC Inc.*, 2014 WL 2737913, at *5 (C.D Cal. June 16, 2014); also *Star Fabrics, Inc. v. The Wet Seal, Inc., et. al.*, Dkt. No. 23, p. 3 (C.D. Cal. Mar. 27, 2015) (distinct differences in the works increase likelihood of independent creation). As discussed in more detail below in Section VII, all of the *Lambert* factors weigh in favor of finding that the Supplier independently created Xue Xu.[8]

Accordingly, since striking similarity is precluded, Unicolors must instead prove copying via direct or indirect access. As stated above, Unicolors has no evidence to show access. Thus, the Court must enter summary judgment in H&M's favor.

## VII.   EH101 AND XUE XU ARE NOT SUBSTANTIALLY SIMILAR

Even if the Court disregards the valid copyright registration and Plaintiff could show access, or the Court found that was a question for the jury, summary judgment for H&M would still be appropriate because the works are not substantially similar. And, if the Court is not inclined to grant summary judgment for H&M, given the wealth of evidence there is no substantial similarity, the most the Court should find is

---

[8] Unicolors is aware that DOMO has a copyright registration for Xue Xu. Unicolors has not rebutted the presumption of its validity. Still, the Motion ignores the registration and speciously urges the Court to apply the factors utilized by the Seventh Circuit in *Selle v. Gibb*. 741 F.2d 896, 903-904 (7th Cir. 1984). Even if that case was binding on this Court, which it is not, and even if it applied when there is a valid copyright registration as is the case here, which it does not, the *Selle v. Gibbs* does not dictate a finding of striking similarity here. *Id.* at 905 (striking similarity only appropriate if defendant had no explanation of coincidence, independent creation or common source).

that there is question of fact for the jury. *Twentieth Century-Fox Film Corp. v. MCA, Inc.*, 715 F.2d 1327, 1329-30 (9th Cir. 1986); *Ent'mt Research Grp. V. Genesis Creative Grp.*, 122 F.3d 1211, 1217 (9th Cir. 1997) ("[A]n infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement").

The burden of proving both substantial and striking similarity is the sole responsibility of the Plaintiff, who must demonstrate such similarity of *protectable* elements from EH101. *Cavalier v. Random House*, 297 F.3d 815, 822 (9th Cir. 2002). To determine whether two works are substantially similar, the Court must engage in an "extrinsic test," including "an objective comparison of specific expressive elements" found within the works. *Cavalier*, 297 F.3d at 822.[9]

Here, despite over a year of litigation, Plaintiff has failed to identify any evidence of protectable similarities between the parties' works. Plaintiff has not done this because, as discussed in H&M's prior motion to dismiss (Dkt. No. 10), and as reinforced below, EH101 consists only of public domain shapes and icons over which Plaintiff cannot assert copyright protection. Furthermore, even if EH101 is not held to be entirely unprotectable, EH101 and Xue Xu have multiple, material, and evident differences between them. Plaintiff also cannot successfully assert a thin copyright over its work. Plaintiff's allegations are not supported by the evidence in this case, and its Motion must be denied.

A.   **The Unprotected Elements Of The Shape Pattern Must Be Filtered Out Before It Is Compared With The Garments**

The Ninth Circuit has repeatedly held that only protected expression may be considered in evaluating substantial similarity. Public domain, generic, and *scènes à*

---

[9] While Plaintiff must also satisfy an intrinsic test – measuring whether a reasonable observer would conclude that the works are substantially similar – a "plaintiff who cannot satisfy the extrinsic test necessarily loses on summary judgment, because a jury may not find substantial similarity without evidence on both . . . tests." *Kouf*, 16 F.3d at 1045; *Smith*, 84 F.3d at 1218.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:16-CV-02322

*faire* elements "are not protectable" under copyright law; the court must "filter out and disregard the non-protectable elements in making its substantial similarity determination." *Funky Films*, 462 F.3d at 1077 (citation omitted).

As part of the filtering process, a court's comparison of copyrighted works to allegedly infringing designs must include "analytic dissection": an objective comparison of each *isolated* element of each work to the exclusion of the works' other elements, combinations of elements, and expressions therein. *Apple Computer Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442-43, 1446 (9th Cir. 1994) (court must eliminate uncopyrightable elements via "analytic dissection," a "successive filtering method"); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1474-75 (9th Cir. 1992); *Dr. Seuss Enterprises, L.P. v. Penguin Books*, USA, Inc., 109 F.3d 1394, 1398 n.3 (9th Cir. 1997).

Analytic dissection is used explicitly for the purpose of determining "whether similarities [between the works] result from unprotectable [or unprotected] expression." *Data Eas USA v. Epyx, Inc.*, 862 F.2d 204, 208 (9th Cir. 1988).  Thus, analytic dissection is used not to compare similarities and identify infringement, but to define and carefully delimit the scope of plaintiff's copyright.[10]

Unprotectable elements of a work include: (1) ideas, as opposed to expression; (2) expressions that are indistinguishable from underlying ideas; (3) standard or stock elements (*scènes à faire*); (4) facts; and (5) public domain images and information. *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1136 (D. Or. 2012); *Satava v. Lowry*, 323 F. 3d 805, 810 (9th Cir. 2003) ("Expressions that are standard or stock, or common to a particular subject matter or medium are not protectable . . . ").

A comparison of protectable elements – as opposed to the entirety of EH101 – ensures that unprotectable expression does not form the basis for a determination of

---

[10] Despite this requirement, as discussed below, Plaintiff has attempted to conduct the extrinsic test based on EH101 in its entirety.  This is entirely inappropriate.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES                CASE NO. 2:16-CV-02322

substantial similarity, thereby "confer[ring] a monopoly of [an] idea upon the copyright owner." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987).

### B.   EH101's Standard And Stock Elements Are Not Protectable

The Code of Federal Regulations explicitly bars "familiar symbols or designs" from copyright protection.  37 C.F.R. § 202.1.  Federal courts across the United States have thus held that images comprised of publicly available icons, pre-existing works, and basic or obvious shapes and forms – including "variations" on those basic shapes and forms – cannot provide a basis for a copyright infringement action.  *See*, *e.g. Tompkins*, 1983 WL 398, at *2 (holding that "[v]ariations of squares, rectangles, circles and ellipses" have long been in the public domain and cannot be the basis of a copyright); *Todd*, 379 F. Supp. 2d at 1114 (copyright projection for barbed wire jewelry denied as design and shape of barbed wire "has been in the public domain for years"); also *Stern*, 99 F. App'x at 778; *Ellison*, 903 F. Supp. at 1360; *Domingo*, 2000 WL 262597 at *1-3; and Mary Campbell Wojcik, *The Antithesis of Originality: Bridgeman, Image Licensors, and the Public Domain*, 30 Hastings Comm. & Ent. L.J. 257, 267 (2008).

### C.   Unicolors Relied Upon And Borrowed From Ancient And Public Domain Patterns In Creating The Shape Pattern

Artwork and fabric patterns substantially similar to EH101 have been in common use for over a millennium.  For example, EH101 is virtually identical to publicly available icons, designs, and shapes – including fabric patterns – from Maya, Inca, Aztec, and other civilizations of Central and South America, and from publications of modern patterns based on those designs which are readily available to clothing designers (collectively, the "Shape Collections").  Lake Report, ¶¶ 22-30. Indeed, Plaintiff's designer **admits** that EH101's elements were directly inspired by "an Aztec art style I had become familiar with by visiting the Natural History Museum."  Dkt. No. 64-3, p. 3.

The elements constituting EH101 were not merely inspired by these styles – in some instances they are identical to images that appear in public domain works.  This can be confirmed through analytic dissection of each repeated element in EH101.

In the Motion, as well as the declaration of its alleged designer,[11] Unicolors claims that EH101 consists of six pattern elements depicting: (1) a man standing next to a tiki house; (2) waves; (3) pebbles; (4) a fish; (5) a "simple geometric design" in the shape of a diamond; and (6) an unnamed "geometric design" with an angled, banked shape.[12]  Mtn at 8-11; Dkt. No. 64-3, ¶ 4-9.  As established by H&M's expert, Robin Lake, public domain art virtually identical to each and every one of these elements can be found in pattern "idea" books utilized by textile designers across the world, as well as in natural history museum collections.  Lake Report, ¶¶ 22-28.  Furthermore, public domain art exists also exists for the elements of EH101 that Unicolors did not discuss in the Motion.  *Id.* ¶ 29, Ex. O.



**Public Domain Art**                    **EH101**

---

[11] Unicolors' CEO testified that EH101 was "inspired by artwork purchased from a design studio, Milkprint, LLC."  Dkt. No. 64-4, p. 5.  Remarkably, only days after Unicolors alleged designer was deposed, and gave contrary testimony, Unicolors' CEO declared that he "had a misunderstanding about the inspiration." *Id.*, p. 5

[12] Only four elements of the EH101 are actually claimed by Unicolors.  When asked about the different bands in EH101 during her deposition, Ms. Lim only identified four key elements; teepee house and person, fish, waves, and pebbles.  Only now, in connection with the Motion, are the other two bands discussed.  SGDMF 72.



This side-by-side comparison illustrates the common qualities of the elements that make up EH101, and their undeniable presence in the public domain. More examples of comparable imagery in the public domain is provided with the expert report of Robin Lake.[13]

**D.      The Use Of Triangles, Diamonds, "X" Symbols, Pyramids, and Circles Are Scènes à Faire and Unprotectable In Fabric Patterns**

Under the doctrine of *scenes a faire*, "courts will not protect a copyrighted work from infringement if the expression embodied in the work necessarily flows from a commonplace idea . . . the rationale is that no one party should have a monopoly on the underlying unprotectable idea." *Skyy*, 225 F.3d at 1082; *Landsberg v. Scrabble Crossword Game Players, Inc.*, 736 F.2d 485, 489 (9th Cir. 1984); *Durang*, 711 F.2d at 143. As explained by the court in *Frybarger v. International Business Machines Corp.*, "when similar features in [works] are . . . at least standard in the treatment of a given [idea], they are treated like ideas and are therefore not protected by copyright." 812 F.2d 525 (9th Cir. 1987); *Bill Diodato Photography, LLC v. Kate Spade, LLC,* 388 F. Supp. 2d 382, 392-93 (S.D.N.Y. 2005) (elements of a photograph image showing a woman's feet, shoes and handbag do not enjoy copyright protection due to *scenes a faire*).

---

[13] Although copyright protection may exist for combination of un-original elements, such protection is not warranted in this case, as discussed in Section VIII below.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 2:16-CV-02322

1    Here, as shown above, and within the Lake Report, EH101 contains many
2  "stock" icon, design, and shape elements, including: (1) the use of triangles and
3  diamonds in a "hashing" or conjoined pattern; (2) the use of "x" shapes in "negative
4  space" to create a geometric pattern; (3) the use of rough-hewn pyramid shapes to
5  create additional "negative space" and to provide the illusion of balance between
6  elements; and (4) the use of concentric circles, one of the most obvious of all fabric
7  pattern elements.  Lake Report., ¶¶ 22-30.

8    These generic icons, designs, and shapes, their variations and the layouts and/or
9  arrangement, are, and have been throughout history, common design elements in
10 fabric and other artwork patterns.[14]  *Id.*  EH101 is comprised largely of images
11 identical, or very nearly identical, to images found in numerous public domain
12 sources.   Without sufficient protectable elements, EH101 is not an original expression
13 that warrants copyright protection.[15]  Accordingly, Plaintiff's Motion must be denied.

14 **VIII.  EH101 IS NOT PROTECTABLE AS A COMBINATION OF**
15 **OTHERWISE UNPROTECTABLE ELEMENTS**

16    Otherwise unprotectable elements, if numerous enough and the arrangement
17 original enough, may be eligible for copyright protection over their arrangement.
18 Satava, 323 F. 3d at 811 ("it is not true that any combination of unprotectable
19 *elements automatically qualifies for copyright protection") (emphasis original).*  If
20 protection is provided due to a combination of otherwise unprotectable elements,
21 however, the underlying elements are not protected, but merely how those elements
22 are positioned vis–à–vis each other.  *Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
23 499 U.S. 340, 349 (1991).

24

25 [14] As shown by the vast universe of public domain patterns similar to EH101, there is
   no originality in the concept of interlacing contrasting patterns in lines across a fabric
26 pattern.  Lake Report, ¶¶ 22-30.
27 [15]Unicolors' failure to present an original arrangement of its unprotectable elements
   also bars Unicolors from claiming even a "thin" copyright over its work.  *Lucky Break*
   *Wishbone Corp. v. Sears Roebuck and Co.*, 528 F. Supp. 2d 1106, 1123-1124 (W.D.
28 Wash. 2007) (quoting *Satava*, 323 F.3d at 812) ("[A] thin copyright 'compris[es] no
   more than [the artist's] original contribution to ideas already in the public domain'").

18

1    As discussed above (see n.12), Unicolors now claims that EH101 consists of six

2   pattern elements.  Mtn at 8-11; Dkt. No. 64-3, ¶ 4-9.  A pattern consisting of six

3   unprotectable elements is not sufficiently numerous enough to warrant protection.

4   *Satava*, 323 F.3d at 811-12 (six otherwise unprotectable elements were not found

5   numerous enough to warrant protection); *Lamps Plus,* 345 F.3d at 1146-47 (four

6   elements not found numerous enough to warrant protection).

7    Unicolors' arrangement of its unprotectable elements is not sufficiently original.

8   Unicolors' elements are arranged and formatted into stacked rows of multi-lined

9   repeats, a format required by Unicolors' chosen medium and manufacturing

10  requirements.  Unicolors' choice to arrange its unprotectable elements in stacked rows

11  is an unremarkable and common practice in the medium of fabric, as confirmed by

12  public domain and commercially available prints which predate Unicolors' alleged

13  creation.  Lake Report ¶¶ 22-30.  Indeed, it is required by the fabric medium; if

14  Unicolors did not do this, its textile could not be made into consistently patterned

15  clothing by manufacturers.

16   Assuming, *arguendo*, that the Court deems the arrangement protectable, that

17  protection only extends to the spacing and placement of the elements, not to the

18  underlying elements themselves.[16]  *L.A. Printex*, 676 F.3d at 850.  When two works are

19  derived from public domain sources, and utilize similar unprotectable motifs, the

20  arrangement and choices of the designers needs to be examined closely to determine

21  whether the works are similar.  Lake Report ¶¶ 31-38.  Here, when so analyzed the

22  works have numerous differences such that a finding of infringement is precluded.  *Id.*

23  **IX.   MANUFACTURING HAS NO BEARING ON THE SUBSTANTIAL**

24  **SIMILARITY ANALYSIS**

25   In an attempt to influence the Court's comparison of the Works, Unicolors'

26  designer claims that the differences between EH101 and the Accused Products can be

27

28  ---
    [16] And such arrangement should only be given "thin" protection in this case, given the
    public domain sources and common arrangement.  *Lucky Break,* 528 F. Supp. 2d at
    1123-24.

attributed to the medium and method used to create them: "The technique of using the knit of a knit fabric to create a pattern cannot achieve the same level of detail that printing on a fabric can . . . resulting in sections of the [Accused Products] which appear to be blank space or random patterns of dots."  Dkt. No. 64-3, p. 4.  Unicolors' designer is wrong.

Works constructed from yarn and jacquard looms – for example, intricate tapestries – are capable of containing exceptional detail.  Lake Report ¶¶ 32, 38.  Neither the use of yarn nor a jacquard loom explains the significant and evident design differences between the works.  Rather than supporting similarity, as Unicolors contends, the absence of similar details between EH101 and Xue Xu is a product of their respective designs.

## X.   COMPARISON REVEALS EH101 AND XUE XU ARE NOT SUBSTANTIALLY SIMILAR

Even if we assume, *arguendo,* that EH101's elements are protectable, which they are not, or the combination of the elements have protection, which H&M disputes in light of the public domain materials showing similar arrangements, the substantial and material differences between EH101 and the Accused Products make plain that they are far from substantially similar, must less virtually identical, or even strikingly similar as Plaintiff claims.  Lake Report ¶¶ 31-38.

First, EH101's diamond pattern has a vertical, hand-drawn presentation, complete with four distinct layers.  *Id*.  In contrast, the Accused Products have a far more simple, horizontal diamond with only two layers, as well as equally proportional triangle shapes above and below it:



*Id.*

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES          CASE NO. 2:16-CV-02322

The second line of EH101 contains an intricate, multi-lined "cross-hatched" ribbon element, which stands in strong contrast to the Accused Products' randomized, speckled band. *Id.* ¶ 32. Plaintiff argues that the Accused Products' band is a mere "misprint" or bowdlerization of EH101, created by the use of yarn and a jacquard loom to create the Accused Products. *Id.* As discussed in Section IX above, however, this manufacturing format actually supports independent creation, rather than copying:



*Id.*

Next, EH101 presents a "man standing next to tiki house." *Id.* ¶ 33. Much like the Works' dissimilar diamonds, both EH101 and the Accused Products contain triangle shapes in their main elements, but the triangle shapes are entirely distinct and unrelated. *Id.* EH101 has six distinct layers of texture, and a narrow, sharp angle to its triangles. *Id.* The Accused Products, on the other hand, contain broad, flowing mountain shapes. *Id.* Further differences exist between EH101's "face" and the Accused Products' sun – EH101's face element has rigid, squared-off, ear-like edges, where the Accused Products portray a consistently striated, sun-like sphere:



*Id.*

Underneath this central element, EH101 portrays narrow, choppy, and tightly packed waves, a stark difference from the Accused Products' loose, wide, and horizontally flowing zig-zags. Again, the differences are evident to the untrained eye:

1    *Id.* ¶ 34.

2          EH101 next contains a band depicting a rounded, octagon-like element, a stark

3    difference from the Accused Products' wide, sloping hexagon shape. *Id.* ¶ 35.  The

4    details within each band are distinct as well – where EH101 has an open, horizontal

5    oval at its center, The Accused Products contain a spare, vertical pair of stud-like dots:

6    
7    

8    *Id.*

9        Continuing to move down EH101, the viewer next sees a frenetic band of hand-

10   drawn, irregular pebbles, which share little similarity to the Accused Products' large,

11   crisp, uniform diamonds.  *Id.* ¶ 36.   EH101's unevenly spaced, open-centered

12   presentation stands in bold contrast to the Accused Products' shared, thin, unadorned

13   edges and bold, stud-dotted centers:

14   
15   
16   
17   *Id.*

18         Finally, EH101 contains a second prominent element: a fish with thin, mirrored

19   "arms" curling back into the element's center. *Id.* ¶ 37.  The Accused Products, on the

20   other hand, contain a chunky butterfly form with four arms – each of which terminates

21   out into different detailed sub-elements. *Id.*  The most prominent of these sub-

22   elements includes a thin, leafy protuberance with three leaves and a perfectly round

23   ball with a dot in its center, totally unlike anything found in EH101:

24   
25   
26   
27   
28   *Id.* ¶ 37.

1  Unicolors' substantial similarity arguments fail to bear weight.  While both
2  patterns' rely on public domain artwork consisting of basic geometric shapes and
3  common tropes in the field of "ethnic" textile design, their expression of such public
4  domain work is distinct from each other.

5  Unicolors may argue that the number or arrangement of rows in the two works is
6  similar, and claim that is proof of copying.  They would be wrong.  Here, the designer
7  of Xue Xu has specifically identified another image, with rows aligned in a similar
8  fashion, as a source and inspiration of Xue Xu.  Lake Report, ¶¶ 9-12, Ex. C.  There is
9  nothing unique, original, or protectable, about arranging series of images into bands
10  for fabric design.  Any similarity to EH101 is coincidence.  *Bernal*, 788 F. Supp. 2d at
11  1052.  If Unicolors had produced the source material and creation files for EH101, it
12  may very well contain another image, or more, with similar row alignment. No
13  substantial similarity exists between EH101 and Xue Xu, and Plaintiff's Motion must
14  be denied in full.

15  **XI.   THE WORKS ARE NOT VIRTUALLY IDENTICAL**

16  Even if this Court were to hold that EH101 has a "thin" copyright, which is the
17  most it should have, if it has anything, Unicolors must prove virtual identity to
18  succeed on its claim.  *Skyy*, 323 F.3d at 766 (holding that the plaintiff possessed a
19  "'thin' copyright which protects against only virtually identical copying").

20  Because the two works are not substantially similar, as shown above, they cannot
21  be virtually identical, which is further basis to grant H&M's Motion.

22  **XII.   H&M CANNOT BE SECONDARILY LIABLE FOR**
23  **EXTRATERRITORIAL INFRINGEMENT**

24  Plaintiff alleges direct infringement against H&M for sales of 10,801 units of
25  Infringing Garments in the U.S. Mtn at 17.  Plaintiff further charges H&M with
26  secondary liability for international sales, by other entities[17], of additional units of

27  ---
[17] Plaintiff does not identify the direct infringing entities except that they are not
28  domestic and their sales were international.  Mtn at 18-21.

23

1  Infringing Garments.  Mtn at18.

2       As a matter of law, under the Copyright Act and long-standing precedent, H&M

3  cannot be secondarily liable for infringement that occurs outside the United

4  States. *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095–96 (9th

5  Cir. 1994) (cased cited therein); *Columbia Pictures Indus., Inc. v. Fung*, 2009 WL

6  6355911, at *7 (C.D. Cal. Dec. 21, 2009), *aff'd in part as modified*, 710 F.3d 1020

7  (9th Cir. 2013);  Nimmer § 12.04[A][3][a], at 12–86, (United States' copyright laws

8  have no application to extraterritorial infringement predates the 1909 Act); *Peter Starr*

9  *Prod. Co. v. Twin Continental Films, Inc.*, 783 F.2d 1440, 1442 (9th Cir. 1986)

10  ("infringing actions that take place entirely outside the United States are not

11  actionable in United States federal courts.")

12       Secondary liability depends, in the first instance, on actionable infringement.  If

13  the accused sales take place outside the United States, however, those sales do not

14  violate the Copyright Act, which "has no extraterritorial application. *L.A. News Serv.*

15  *v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998).  Without a

16  predicate violation of the Copyright Act, there can be no secondary liability;

17  contributory or vicarious infringement exists only if the "underlying direct

18  infringement occurred in the United States." *Perfect 10, Inc. v. Yandex N.V.*, 2013

19  WL 4777189, at *8-9 (N.D. Cal. Sept. 6, 2013).

20       Here, except for sales directly made by H&M (for which it cannot also be

21  secondarily liable), all other accused sales occurred outside the United States, as

22  Plaintiff concedes in its papers.  Mtn at 18.  Thus, and as a matter of black-letter law,

23  H&M cannot be found liable for contributory or vicarious infringement.

24  **XIII.  UNICOLORS' ALLEGED DAMAGES**

25       Even if Unicolors could prove infringement, which it cannot, the damage

26  amounts set forth in the Motion are wholly without support.  Without an expert, or

27  actual evidence, counsel for Unicolors simply multiplied the full retail price by the

28  number of units sold.  There is no evidence that H&M sold the units at full retail

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES       CASE NO. 2:16-CV-02322

1   price; the only evidence is to the contrary.  Declaration of Chelsea Wharton, ¶ 22;

2   Riordan Decl., Ex. 41 (Expert Report of Justin Lewis, p. 10).  Nor is there any

3   evidence on the volume of garments sold by other companies in other countries, or the

4   price of those sales (even if those were relevant data points).

5   Counsel's calculations are sheer speculation and insufficient to establish a

6   recoverable damages amount.  *Polar Bear Prods., Inc. v. Timex Corp*., 384 F.3d 700,

7   711 (9th Cir. 2004) (plaintiff must proffer some evidence that infringement caused the

8   targeted revenue).  The only reliable figures for Unicolors' alleged damages (i.e.,

9   disgorgement) are those contained in H&M's Expert report.

10  **XIV.   H&M'S FEES**

11  If the Court grants summary judgment for H&M, H&M is entitled to its

12  attorney fees as the prevailing party.  17 U.S.C. § 505.

13  **XV.   CONCLUSION**

14  H&M's design was independently created; EH101 and Xue Xu are neither

15  strikingly nor substantially similar, and Unicolors cannot provide any evidence of

16  access.  There is no viable predicate act to support a claim for secondary infringement.

17  Because Unicolors cannot establish a triable issue of fact with respect to the foregoing

18  issues, H&M is entitled for summary judgment as a matter of law.

19

20  Dated:  May 1, 2016                             NIXON PEABODY LLP

21

22                                          By  */s/ Staci Jennifer Riordan*
                                                Staci Jennifer Riordan
23                                              Jessica Walker
                                                Attorneys for Defendant
24                                              H & M HENNES & MAURITZ LP

25

26

27

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES          CASE NO. 2:16-CV-02322