1    Staci Jennifer Riordan (SBN 232659)
     Aaron Brian (SBN 213191)
2    Dale A. Hudson (SBN 81948)
     **NIXON PEABODY LLP**
3    300 S. Grand Avenue, Suite 4100
     Los Angeles, CA  90071-3151
4    Tel: 213-629-6000
     Fax: 213-629-6001
5    sriordan@nixonpeabody.com
     abrian@nixonpeabody.com
6    dhudson@nixonpeabody.com

7

8    Attorneys for Defendant
     H & M Hennes & Mauritz LP
9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12

13   UNICOLORS, INC., a California        Case No.: 2:16-cv-02322 - AB - SK
14   Corporation,
                                          Honorable André Birotte Jr.
15              Plaintiff,

16         vs.                            **DEFENDANT H & M HENNES &
                                          MAURITZ LP'S OPPOSITION TO
17   H & M HENNES & MAURITZ L.P., a       PLAINTIFF'S MOTION IN LIMINE
     New York Limited Partnership, and   NO. 2 TO EXCLUDE EXPERT
18   DOES 1-20, inclusive,               WITNESS TESTIMONY OF JUSTIN
                                          LEWIS**
19              Defendants.
                                          Date:    November 3, 2017
20                                        Time:    11:00 a.m.
                                          Ctrm:    7B
21
                                          Filed:   April 5, 2016
22                                        PTC:     November 3, 2017
                                          Trial:   November 14, 2017
23

24

25

26

27

28

4850-0718-4209.6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In this action, plaintiff Unicolors, Inc. ("Plaintiff" or Unicolors") alleges that it holds a valid copyright on the design of fabric EH101, and that defendant H & M Hennes & Mauritz LP ("Defendant" or "H&M") violated this copyright by selling garments with the Xue Xu design.

In Motion in Limine no. 2, Plaintiff seeks to preclude the testimony of defense expert Justin Lewis, who has been designated to testify on the issue of Plaintiff's damages, including applicable deductions from H&M's gross revenues on sale of the subject garments.

As Plaintiff's Motion barely acknowledges, exclusion of testimony under Rule 37 is only authorized if ***both:*** (1) there was no "substantial justification" for the delayed disclosure, and (2) the late disclosure was not harmless, i.e., caused actual prejudice to a party.   Fed. R. Civ. P. 37(c)(1).   Plaintiff's Motion in *Limine* barely discusses these issues, for obvious reasons.   In this case, it is apparent that H&M had substantial justification for the April 28 disclosure, which H&M denies was late, and that in any event Plaintiff has not been prejudiced by the delay.

Plaintiff's Motion does not even address the issue of substantial justification, which is odd because the circumstances which constitute substantial justification for the timing of the disclosure of Mr. Lewis have been extensively briefed to the court. *See, e.g*., Dkt. 94, p. 6-7, ¶¶ 16-18.   This presumably reflects Plaintiff's inability to rebut H&M's showing of substantial justification, discussed below.

And while Plaintiff makes ***feigned claims*** that it was prejudiced because the disclosure of Mr. Lewis was allegedly delayed from April 7 to April 28, 2017, it is readily apparent that Plaintiff has not suffered any prejudice at all.   Rather what occurred is counsel for Plaintiff made a tactical decision that Plaintiff will be better off attempting to preclude the testimony of Mr. Lewis than attempting to mitigate any purported prejudice arising from the timing of the disclosure of Mr. Lewis.

1

It is also appropriate to observe that any purported prejudice suffered by Plaintiff on account the late disclosure of H&M's experts is **minimal** compared to the actual prejudice imposed on H&M on account of Plaintiff's active concealment of its late-disclosed witnesses, Jin Young Suh and Jonathan Rho.[1]  The identify of Suh, for example, was concealed for over **thirteen months**, from August 4, 2016 (the date of Plaintiff's Initial Disclosure) until September 22, 2017, when Plaintiff submitted its list of trial witnesses.  In comparison, Mr. Lewis's report was provided to Plaintiff on April 28, 2017, twenty nine weeks prior to the current trial date, and only **twenty-one days** after the initial expert disclosure deadline, the day Plaintiff claims Mr. Lewis's report should have been produced.  Yet, Plaintiff seeks to preclude the testimony of Mr. Lewis and present the testimony of Suh, a patently absurd outcome.

## II.   PROCEDURAL HISTORY

On August 19, 2016, this Court ordered that initial expert disclosures occur on April 7, 2017, and that rebuttal experts be disclosed on April 28, 2017.  The Court also set an expert discovery cutoff of May 12, 2017.  Dkt. No. 23.

Plaintiff elected not to designate any expert witnesses on April 7.  H&M did not designate any experts on April 7 because H&M could not address Plaintiff's damage claim until Plaintiff articulated that claim, and it seemed probable that Plaintiff would do so through expert testimony.  When the initial expert disclosures were due on April 7, it was H&M's intention to designate a rebuttal expert to address Plaintiff's damage claims.   Under governing law, Plaintiff may elect to recover actual damages and profits, or statutory damages, and it is then H&M's burden to rebut the plaintiffs' proof of gross revenues by presenting evidence of deductible expenses, etc.  17 U.S.C. § 501(b).  Thus, as a practical matter, H&M cannot prepare an expert damage analysis until the Plaintiff has presented its damage analysis, generally through an expert.

---

[1] The late disclosure of Suh and Jonathan Rho is the subject of Defendant's Motions *In Limine* Nos. 2 and 6.

1  After choosing to not disclose an expert on damages, Plaintiff's counsel
2  pursued a strategy of presenting "backdoor" expert testimony through non-retained,
3  non-designated witnesses.  Thus, Plaintiff's Motion for Summary Judgment, filed on
4  April 25, 2017, was supported by a Declaration from counsel setting detailed
5  calculations in support of Plaintiff's damage claim.  Dkt. 64-2, Jeong Decl., ¶¶ 9-10.

6  In response to Plaintiff's use of its attorney, Mr. Jeong, as an undisclosed
7  expert, and in light of Plaintiff's failure to formally designate experts, on April 28,
8  2017, H&M's counsel provided Plaintiff's counsel with the rebuttal expert report
9  prepared by Mr. Lewis. Declaration of Staci Jennifer Riordan ("Riordan Decl."), ¶ 5.
10  In doing so, H&M's counsel informed Plaintiff that Lewis was serving as one of
11  H&M's rebuttal experts.  *Id.*  Counsel for Plaintiff never made any effort to depose
12  either expert.  *Id.*  Counsel for Plaintiff never requested leave to designate any rebuttal
13  experts.  *Id.,* ¶ 6.

14  **III.   ARGUMENT**

15  **A.     The Testimony of Mr. Lewis Is Not Precluded Under Rule 37**

16  As the Ninth Circuit stated, there are "Two express exceptions [which]
17  ameliorate the harshness of Rule 37(c)(1): The information ***may be introduced*** if the
18  parties' failure to disclose the required information is ***substantially justified*** or
19  ***harmless***."  *Yeti v. Molly Ltd. v. Deckers Outdoor Corporation*, 259 F. 3d 1101, 1106,
20  (9th Cir. 2001)(emphases added); Fed. R. Civ. P. 37(c) (1).  Both exceptions apply in
21  this case.

22  Moreover, even if neither such exception applies, the exclusion of expert
23  testimony is discretionary with the Court.  As the *Rutter Book* treatise explains:

24  Exclusion discretionary: Even absent "substantial justification" for
25  nondisclosure or showing that it was "harmless," exclusion of expert
26  testimony as a sanction for a violation of a discovery order rests in the
27  court's sound discretion. The court is required to consider:

28

3

- the explanation, if any, for the party's failure to comply with the discovery order;
- the prejudice to the opposing party of allowing the witnesses to testify;
- the possibility of curing such prejudice by granting a continuance;
- the importance of the witness' testimony.

*Rutter Group Practice Guide:  Federal Civil Procedure Before Trial,  California and Ninth Circuit Edition,* § 11.453; *Barrett v. Atlantic Richfield Co.,* 95 F. 3d 375, 380 (5th Cir. 1996).

These factors all militate against preclusion of Mr. Lewis's testimony.

### 1.   Plaintiff Has Not Been Prejudiced by Receiving Lewis's Expert Report on April 28

The only alleged prejudice which Plaintiff claims to have sustained as a result of Mr. Lewis's disclosure on April 28 is Plaintiff's purported inability to designate a rebuttal expert on the issue of comparability. Dkt. 124 p. 4:12-17.  However, any such prejudice is obviously self-inflicted, since Plaintiff has now had twenty-two weeks to request any desired relief, such as by requesting that H&M stipulate that Plaintiff may designate rebuttal experts.  Plaintiff has never made any such request.  In fact, counsel for Plaintiff first complained about its purported inability to designate a rebuttal expert on September 26, when it filed its Motions in Limine.  In response, counsel for H&M offered a stipulation permitting Plaintiff to designate a rebuttal expert, which Plaintiff refused.  Riordan Decl., ¶ 7, Ex. A.

Furthermore, once Plaintiff received Mr. Lewis's expert report on April 28, it had two weeks to take Mr. Lewis's deposition before the then-existing expert discovery cutoff of May 12, 2017.  Plaintiff has never made any effort whatsoever to depose Mr. Lewis.  *Id.,* ¶ 5.  The explanation for this lack of effort is not hard to decipher:  Plaintiff's counsel decided its best strategy is to feign prejudice to facilitate

4

1  its motion to exclude Mr. Lewis's testimony.  Obviously prejudice that could be easily

2  avoided is not a sound basis for excluding Mr. Lewis's testimony.

3       Where, as here, the opposing party is not substantially prejudiced by an alleged

4  technical violation of Rule 26(a)(2)(B), the testimony of the expert should be

5  admitted.   *Lanard Toys Ltd. v. Novelty, Inc.,* 375 Fed.Appx. 705 (9th 2010)

6  (Notwithstanding violation of Rule 26(a)(2)(B), expert testimony properly admitted

7  where full compliance with the Rule occurred seven months before trial, and the

8  opposing party made no effort to depose the expert.).

9        **2.   H&M's Allegedly "Late" Disclosure Is Substantially Justified**
        **Because Plaintiff Unexpectedly Did Not Designate an Expert**
10       **on Damages, While Simultaneously Proffering Damage**
        **Calculations in the Form of a Declaration from Counsel**
11

12       As noted above, experts who are not timely disclosed should nonetheless be

13  allowed to testify, where, as here, there was a "substantial justification" for the

14  allegedly delayed disclosure.  Fed. R. Civ. P. 37(c) (1).  It is true, as Plaintiff asserts,

15  that Plaintiff did not formally designate an expert witness to testify on Plaintiff's

16  alleged damages on April 7, when initial expert disclosures were due.  Plaintiff

17  thereafter, however, submitted a Declaration from attorney Jeong with detailed

18  calculations in support of Plaintiff's damage claim.  Dkt. 64-2, Jeong Decl., ¶¶ 9-10.

19  For the first time, H&M was provided with a damage analyses which it could rebut.

20       On April 28, 2017, H&M designated Mr. Lewis to testify as an expert on the

21  issue of Plaintiff's damages, and concurrently provided Plaintiff's counsel with the

22  expert report prepared Mr. Lewis.  Under these circumstances, there was substantial

23  justification for the timing of the disclosure of Mr. Lewis.  As the Rutter Group

24  explains:

25       Factors relevant in determining whether the nondisclosure was

26       "substantially justified" under FRCP 37(c)(1) include:

27            • whether the failure to disclose was willful or merely negligent; and

28

5

- whether the nondisclosure resulted from factors beyond the control of the expert's proponent

*Rutter Group Practice Guide: Federal Civil Procedure Before Trial, California and Ninth Circuit Edition*, § 11:451; *Morel v. Daimler-Chrysler Corp.* (D PR 2009) 259 FRD 17, 20-21.

In this case, it is apparent that H&M did not engage in any "willful" nondisclosure. Moreover, the predicament H&M faced was due to factors beyond the control of H&M, in that Plaintiff failed to designate an expert on the issue of damages, an issue on which Plaintiff bears the burden of proof. Thus, both factors support a determination that Plaintiff was substantially justified in producing Mr. Lewis's expert report on April 28.

### B.   The Testimony of Expert Justin Lewis Is Admissible

Plaintiff's Motion to Exclude Mr. Lewis from testifying is a confusing hodgepodge of meritless evidentiary objections and unsupported factual allegations. Ultimately, what comes through is that Plaintiff is hoping to obtain a windfall recovery measured by H&M's gross revenues from sales of the garments made with subject fabric, and to exclude evidence that H&M incurred any deductible expenses in operating its retail stores or that profits were driven by non-infringing factors. However, Mr. Lewis's proposed testimony is entirely proper and fully admissible.

### 1.   Experts Can Rely on Inadmissible Materials: Regardless, H&M's Computer Printout is Admissible

Plaintiff argues that Mr. Lewis should be excluded because he relies on computer printouts containing sales information and that such printouts are inadmissible. Plaintiff is wrong on both counts.

First, the printouts are admissible as a business record. *United States v. Catabran*, 836 F.2d 453, 457 (9th Cir. 1988). In *Catabran, supra,* as here, the computer printouts were a compilation of bookkeeping information. The printouts at issue in this matter are compilations of inventory, sales information, average sales

6

price, operating expenses, gross revenue, gross profits and net profits.  The fact that the printouts were prepared for this litigation does not exclude them from the business records exception.  *L.A. Printex Indus., Inc. v. Target Corp.*, No. CV-064640, 2008 WL 11342954, at *1 (C.D. Cal. Mar. 7, 2008) ("the Report falls under the business record exception … [a]lthough the Report was generated for trial, the underlying computer data was kept in the regular course of business").

Plaintiff also argues these records are not admissible because H&M did not comply with Rule 1006.  Again, Plaintiff misses the mark.  Rule 1006 does not apply to these business records, and H&M is not relying on that Rule to have this record admitted. *L.A. Printex Indus.,* 2008 WL 11342954 at *1 ("because the Report is a business record, and not a summary, Federal Rule of Evidence 1006 does not apply").

Second, an expert may base his opinion and testimony on materials that are not admissible.  Fed. R. Evid. 703 (expert may rely on materials that are not admissible) *United States v. Zarate-Morales*, 377 F. App'x 696, 698 (9th Cir. 2010) ("[e]xpert witnesses may rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field"); *United States v. W.R. Grace*, 504 F.3d 745, 763 (9th Cir. 2007) ("an expert reasonably may rely on inadmissible evidence in forming an opinion or delivering testimony")  Thus, even if the computer printouts that Mr. Lewis relied on are not admissible, which they are, Mr. Lewis is not precluded from offering an expert opinion based on the information contained in those reports.

### 2.    The Lewis Report Is Based On Specialized Knowledge and Supported by Sufficient Facts and Data

Plaintiff next argues that Mr. Lewis fails Rule 702 because his testimony is not based on (1) specialized knowledge, or (2) sufficient facts and data.  This argument is just empty rhetoric.

As part of a damages calculation under the Copyright Act, a defendant has the burden to "prove his or her deductible expenses and the elements of profit attributable

to factors other than the copyrighted work."  17 U.S.C. 504(b).  Mr. Lewis is offered to present that evidence.  Mr. Lewis is qualified to offer expert testimony on damages calculations that involve analysis of revenue, profits, costs, expenses and related and similar figures.[2]  Mr. Lewis's qualifications are impressive.  Briefly, in addition to his 20 years of practical experience, Mr. Lewis is Certified Public Accountant, Certified Valuation Analyst and Certified Financial Forensic.  Riordan Decl., ¶ 8, and Ex. B.

As is explained in his report, Mr. Lewis will offer testimony about H&M's deductible expenses and the factors that attributed to H&M's revenue other than its use of the accused fabric artwork.  Mr. Lewis described his methodology and procedure for calculating the appropriate deductions.  He identified the sources of information that he relied upon, including an interview with H&M's Chief Financial Officer, Chelsea Wharton, and review of documents relating to the acquisition and sales of the accused garments.  And he provided a complete picture of how he reached his conclusion.  Plaintiff's conclusory statements that Mr. Lewis's opinions are "in no way tethered" to the actual sales data is simply a lawyer's argument, but is not borne out by an actual review of his report.  Plaintiff fails to point out where Mr. Lewis' report strays from areas properly within his expertise and within Rule 702, or specify any particular statement, chart, opinion or otherwise.  Of course, Plaintiff could have challenged Mr. Lewis's methodology and conclusions by way of deposition, but chose not to.  The opinions contained in Mr. Lewis's report satisfy Rule 702.

Moreover, it may be true, as Plaintiff seems to concede, that H&M could offer similar expert opinion on revenue and deductions through Chelsea Wharton, as she is the Chief Financial Officer and has specialized knowledge, skill and training from that

---

[2]  The testimony that Mr. Lewis will provide, and that which is contained in his report, is not the type of simple calculation that "the untrained layman would be qualified to determine intelligently and to the best possible degree […] without enlightenment from those having a specialized understanding of the subject involved in the dispute." Notes of Advisory Committee on Proposed Rules (quoting Ladd, Expert Testimony, 5 *Vand.L.Rev.* 414, 418 (1952)).

8

experience.  Such facts, however, do not preclude H&M from choosing to present this type of detailed and specialized financial testimony through a retained expert.

Plaintiff's principal grievance seems to be that it is not H&M's business practice to maintain information on costs by individual product, and that Lewis therefor chose to allocate expenses based on a percentage of sales revenues.  Yet Plaintiff fails to explain why the allocation performed by Lewis is inappropriate under the circumstances.

Plaintiff then asserts H&M failed to present "unequivocal" proof that H&M's operating expenses contributed to the sales of the subject garments.  Dkt. 125, P. 8:4-16.  To the contrary, Mr. Lewis reasonably concluded that H&M would not have sold any garments in its retail stores unless it actually operated retail stores, with attendant rent, utilities, payroll, etc.  Plaintiff does not explain why this rational is unsound.

Plaintiff's allegation that H&M did not carry its burden of proving the deductible expenses is an argument for closing, but is not a proper a basis to exclude an expert witness *in limine*.

### 3.    Mr. Lewis is Qualified to Testify on Apportionment of Profits

Assuming plaintiff puts on competent evidence of profits that H&M earned selling the accused garments, H&M has the burden of proving the elements of profit attributable to factors other than the alleged use of EH101.  17 U.S.C. 504(b).  "This question is highly fact-specific and should [be] left to the jury."  *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 797–98 (8th Cir. 2003)  (Evidence such as brand recognition, customer loyalty, and non-infringing ad campaigns supported jury's implied finding that 90% of defendant's profit was attributable to factors other than infringement) (internal citations and quotations omitted).  The *Andreas* court specifies that **brand recognition** is a proper factor for determining what portion of the subject profits were generated by elements other than the infringed work.  Nor does apportionment depend upon mathematical precision, as Plaintiff argues.  *Cream Records Inc. v. Jos. Schlitz Brewing Co.*, 754 F.2d 826 (9th Cir 1985) (owner not

9

entitled to recover all profits "merely because the infringer fails to establish with certainty the portion attributable to the non-infringing elements"), and *Sheldon v. Metro-Goldwyn Pict. Corp.*, 309 U.S. 390, 408, 60 S.Ct. 681 ("what is required is … only a reasonable approximation").

In our case, as Mr. Lewis points out in his report, H&M has had the second most valuable apparel brand name for the last two years.  Mr. Lewis has special expertise in valuation that supports his conclusions based on this important element. Although it may be common sense that the second most valuable apparel brand will make a number of sales based solely on its brand name, an expert can assist the trier of fact with understanding how brands are valued, and how that data should be factored when apportioning profits between infringing elements and non-infringing elements. While the fact finder will make the ultimate determination regarding apportionment, H&M's expert testimony on apportionment should not be precluded.

### 4.  <u>Mr. Lewis's Testimony is Relevant</u>

Plaintiff makes the curious argument that Mr. Lewis's testimony is irrelevant. Plaintiff, however, offers no support for this contention, nor is there any.

Mr. Lewis' testimony covers deductions from gross revenue and apportionment of profits between infringing and non-infringing elements.  This is precisely the type of evidence that the Copyright Act requires a defendant to present to appropriately reduce and apportion any profits subject to disgorgement.  17 U.S.C. 504(a) ("the [alleged] infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work").  Testimony on this very point is relevant.  See Fed. R. Evid. 401.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Motion *in Limine* should be denied.

1

2    Dated:  October 3, 2017                    NIXON PEABODY LLP

3

4                                     By  */s/ Staci Jennifer Riordan*

5                                         Staci Jennifer Riordan
                                         Aaron Brian
6                                         Neal J. Gauger
                                         Attorneys for Defendant
7                                         H & M HENNES & MAURITZ LP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

H & M HENNES & MAURITZ LP'S OPPOSITION TO PLAINTIFF'S MIL NO. 2     CASE NO. 2:16-CV-02322
4850-0718-4209.6