

1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

12   UNICOLORS, INC.

13              Plaintiff,

14   v.

15   H&M HENNES & MAURITZ L.P., *et*
     *al.*,

16

17              Defendant.

18

Case No.  16-cv-02322-AB (SKx)

**ORDER DENYING DEFENDANT'S
MOTION FOR JUDGMENT AS A
MATTER OF LAW AND
GRANTING DEFENDANT'S
MOTION FOR A NEW TRIAL IN
PART**

19         On April 10, 2018, Defendant H & M Hennes & Mauritz L.P. ("H&M LP")

20   filed a Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial.

21   Dkt. No. 247.  Plaintiff Unicolors, Inc. ("Unicolors") opposed the motion, and H&M

22   LP filed a reply.  Dkt. Nos. 250, 251.  The Court heard oral argument regarding the

23   motion on June 8, 2018.  For the following reasons, the Court **DENIES** the motion for

24   judgment as a matter of law.  The Court **GRANTS** the motion for a new trial **IN**

25   **PART** as to the issue of damages, subject to Unicolors accepting a remittitur of

26   damages.

27   **I.    BACKGROUND**

28         From December 5 through December 7, 2017, the Court held a jury trial

1.

1    regarding Unicolors' allegations of copyright infringement against H&M LP.  At the

2    close of Unicolors' case, H&M LP moved for judgment as a matter of law.  The Court

3    denied the motion.  After deliberation, the jury returned a verdict in Unicolors' favor.

4    The jury found that Unicolors owned a valid copyright in the artwork at issue

5    ("EH101"), that H&M LP infringed on that copyright, and that H&M LP's

6    infringement was willful.  Dkt. No. 229.  The jury awarded Unicolors $817,920 in

7    profit disgorgement damages and $28,800 in lost profits.  *Id.*

8        H&M LP now renews its motion for judgment as a matter of law.  It argues that

9    Unicolors did not have a valid copyright and that Unicolors failed to prove H&M LP

10    copied EH101.  In the alternative, H&M LP seeks a new trial.  It argues that the jury

11    awarded excessive, unsupported damages; that the Court failed to instruct the jury on

12    presumptions to which it was entitled; that the Court improperly excluded expert

13    witness testimony; that the Court improperly admitted evidence; and that the Court

14    read the jury improper, unnecessary instructions.

15    ## II.   LEGAL STANDARD

16        A motion under Rule 50(b) challenges the sufficiency of the evidence presented

17    at trial to support the prevailing party's case.  Judgment as a matter of law following a

18    jury verdict is proper "if the evidence, construed in the light most favorable to the

19    nonmoving party, permits only one reasonable conclusion, and that conclusion is

20    contrary to the jury's." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir.

21    1993).  Judgment as a matter of law is improper if there is substantial evidence to

22    support the jury's verdict.  *See Transgo, Inc. v. Ajac Transmission Parts, Corp.*, 768

23    F.2d 1001, 1014 (9th Cir. 1985).  "'Substantial evidence' is admissible evidence that

24    reasonable minds might accept as adequate to support a conclusion." *Davis v. Mason*

25    *Cty.*, 927 F.2d 1473, 1486 (9th Cir. 1991).  In considering a motion under Rule 50, the

26    Court does not assess the credibility of witnesses and does not "weigh the evidence,

27    but [instead] draws all factual inferences in favor of the nonmoving party." *Lytle v.*

28    *Household Mfg., Inc.*, 494 U.S. 545, 554 (1990).  The "standard for granting summary

judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal citation omitted).  Finally, the Court  may not substitute its judgment of the facts for the judgment of the jury.  *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 33 (1944).

Rule 59 governs motions for a new trial.  Pursuant to Rule 59(a)(1), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . , for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Although Rule 59 does not enumerate specific grounds for a new trial, the Ninth Circuit has held that "the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)) (brackets omitted).  A district court "enjoys considerable discretion in granting or denying the motion." *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003).

When the movant claims that a verdict was against the clear weight of the evidence at trial, a new trial should be granted "[i]f, having given full respect to the jury's findings, the judge . . . is left with the definite and firm conviction that a mistake has been committed."  *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371–72 (9th Cir. 1987) (quotations omitted).  A "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."  *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

If a court determines that the evidence sufficiently supported a finding of liability, but that the jury awarded excessive damages, it may grant a remittitur. *Minthorne v. Seeburg Corp.*, 397 F.2d 237, 244–45 (9th Cir. 1968).  "A remittitur must reflect the maximum amount sustainable by the proof."  *Oracle Corp. v. SAP*

1  *AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) (quotations omitted).  Generally, the plaintiff

2  has the option to accept the reduced damages award or conduct a new trial.  *Hetzel v.*

3  *Prince William County, Va.*, 523 U.S. 208, 211 (1998).  "If the prevailing party does

4  not consent to the reduced amount, a new trial must be granted."  *Fenner v.*

5  *Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).

6  ### III.   DISCUSSION

7         H&M LP identifies various purported errors that it claims warrant judgment as

8  a matter of law or a new trial.  Some of those claimed errors relate to liability, and

9  others concern damages.  The Court addresses each in turn.

10  ### A. Liability

11        H&M LP claims the jury found it liable for willful copyright infringement in

12  error for five reasons: (1) the evidence established that Unicolors' copyright was

13  invalid; (2) the jury could not have found striking similarity or H&M LP's access to

14  EH101; (3) the Court improperly declined to instruct the jury about presumptions that

15  H&M LP contends stem from a third party's Chinese copyright registration; (4) the

16  Court impermissibly excluded H&M LP's United States copyright registration; and

17  (5) Unicolors failed to present sufficient evidence of willfulness.

18  ### 1.  The Copyright's Validity

19        H&M LP contends that Unicolors' copyright was invalid, as a matter of law,

20  because the evidence at trial indicated that Unicolors obtained the copyright

21  fraudulently.  Unicolors registered EH101 in a joint registration, Registration No. VA

22  1-770-400 (the "400 Registration").  *See* Dkt. No. 64-7.  The 400 Registration had a

23  publication date of January 15, 2011.  *Id*.  According to H&M LP, the undisputed

24  evidence at trial showed that the artworks registered in the 400 Registration were not

25  all published on the same date.  Thus, H&M LP argues, Unicolors fraudulently

26  misrepresented the publication date for at least some of the works registered in the 400

27  Registration, rendering the registration invalid.

28        The Copyright Act allows multiple works to be registered in a single copyright

4.

1  in certain circumstances.  As relevant here, a claimant can register a collection of

2  works "as a single work."  37 C.F.R. § 202.3(b)(4).  In the case of published works, a

3  claimant only can register a collection of public works in a single registration if "the

4  collection is sold, distributed or offered for sale concurrently."  *United Fabrics Int'l,*

5  *Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1259 (9th Cir. 2011) (citing 37 C.F.R. §

6  202.3(b)(4)).

7       "A copyright registration is 'prima facie evidence of the validity of the

8  copyright and the facts stated in the certificate.'"  *United Fabrics*, 630 F.3d at 1257

9  (quoting 17 U.S.C. § 410(c)).  Inaccurate information in a copyright registration can

10  invalidate a registration, but  such invalidity does not occur automatically.  *See L.A.*

11  *Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 854 (9th Cir. 2012), *as*

12  *amended on denial of reh'g and reh'g en banc* (June 13, 2012) (explaining that an

13  "error in itself does not invalidate the registration or render the certificate of

14  registration incapable of supporting an infringement action").  Instead, a registration

15  remains effective despite containing inaccurate information unless "(A) the inaccurate

16  information was included on the application for copyright registration with knowledge

17  that it was inaccurate; and (B) the inaccuracy of the information, if known, would

18  have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(1).

19  Inadvertent mistakes in a copyright registration therefore do not invalidate the

20  registration "unless the alleged infringer has relied to its detriment on the mistake."

21  *L.A. Printex*, 676 F.3d at 853 (quotations omitted).  Because invalidity due to

22  inaccuracies in a registration requires the copyright claimant to have known its

23  application was inaccurate, a party asserting invalidity must show some indication that

24  the claimant intended to defraud the Copyright Office.  *See id*. at 854 (holding that the

25  plaintiff's error in including formerly published works in a registration for an

26  unpublished collection did not invalidate the registration because the evidence did not

27  show "that the error was other than an inadvertent mistake"); *Advanced Visual Image*

28  *Design, LLC v. Exist, Inc.*, No. CV 10-09383 DMG (AJWx), 2013 WL 12122662, at

1  \*5 (C.D. Cal. Jan. 22, 2013) (rejecting the defendant's invalidity argument where it

2  "fail[ed] to establish that [the plaintiff] intended to defraud the Copyright Office").

3       H&M LP's invalidity argument fails on two counts.  First, H&M LP has not

4  shown that the 400 Registration had inaccurate information that, if known to the

5  Register of Copyrights, would have caused it to refuse registration.  37 C.F.R. §

6  202.3(b)(4) requires published works registered as a single unit to have been

7  published concurrently, not to have been published concurrently on any particular

8  date.  H&M LP fails to identify evidence indicating that the works listed in the 400

9  Registration were published separately.  To the contrary, when Nadir Pazirandeh was

10 asked at trial whether he presented the works listed in the 400 Registration as a group,

11 he responded, "that's always our practice."  Decl. Staci Riordan, ¶ 16, Ex. J, Trial Tr.

12 54:9–11 (N. Pazirandeh).  Mr. Pazirandeh did go on to testify that the works were

13 presented to Unicolors salespeople on January 15, 2011, rather than to purchasers,

14 which would likely be required to establish publication on that date.  *See United*

15 *Fabrics*, 630 F.3d at 1259 ("A necessary element of a published-collection copyright

16 is that the collection is sold, distributed or offered for sale concurrently.").  But

17 nothing in the identified testimony suggests that the works listed in the 400

18 Registration were eventually presented to purchasers on separate dates.  Thus, even if

19 the Register of Copyrights had known that the works listed in the 400 Registration

20 were published on a date other than January 15, 2011, it would not necessarily have

21 refused the registration.

22      Second, H&M LP has pointed to no evidence indicating that Unicolors knew

23 the 400 Registration contained false information at the time of the registration.

24 Without any showing that Unicolors intended to defraud the Copyright Office, H&M

25 LP's invalidity argument fails.

26             **2.  Copying**

27      H&M LP also argues that the jury could not have reasonably found that it

28 copied EH101.  It claims Unicolors neither established a striking similarity between

1   the parties' works nor H&M LP's access to EH101.

2       Generally, a plaintiff asserting copyright infringement can establish copying by

3   showing (1) a substantial similarity between the allegedly infringing work and the

4   copyrighted work, and (2) that the defendant had access to the copyrighted work.

5   *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000).  However, a

6   plaintiff can overcome an insufficient showing of access if the two works are

7   "strikingly similar."  *See Baxter v. MCA*, 812 F.2d 421, 423 (9th Cir. 1987) ("If there

8   is no evidence of access, a 'striking similarity' between the works may allow an

9   inference of copying.").

10              **a.  Access**

11      To establish access, a plaintiff must show that the defendant had a reasonable

12  opportunity to view the plaintiff's copyrighted work.  *L.A. Printex,* 676 F.3d at 846.  It

13  can do so by asserting "circumstantial evidence of either (1) a chain of events linking

14  the plaintiff's work and the defendant's access, or (2) widespread dissemination of the

15  plaintiff's work."  *Id.* at 846–48 (holding that a jury could conclude that the plaintiff's

16  copyrighted design was widely disseminated where the plaintiff sold 50,000 yards of

17  fabric bearing the design).

18      Here, the parties stipulated that Unicolors sold at least 51,973 yards of fabric

19  bearing the EH101 design.  Dkt. No. 182, at p. 4.  Unicolors also presented evidence

20  that it sold the fabric to H&M LP's competitors, such as Target and Nordstrom.  Dec.

21  7, 2017 Trial Tr. 47:22–25 (N. Pazirandeh) (Dkt. No. 235).  This evidence was

22  sufficient for a reasonable jury to determine that EH101 was widely disseminated such

23  that H&M LP had an opportunity to view it.

24              **b.  Striking Similarity**

25      Even if the jury did not find sufficient evidence that H&M LP had access to

26  EH101, it could have found that the designs on H&M LP's garments were strikingly

27  similar to EH101.  In arguing that the jury could not have found striking similarity,

28  H&M LP relies on the Court's denial of Unicolors' motion for summary judgment, in

7.

1   which the Court declined to find that the parties' products were strikingly similar as a
2   matter of law.  *See* Dkt. No. 180, at p. 7.  But that ruling simply meant that the jury
3   would have to determine whether the works were strikingly similar.  Indeed, as
4   detailed in the Court's summary judgment order, EH101 and the designs on H&M
5   LP's garments contained many of the same elements.  *Id.*, at pp. 5–6.  The jury could
6   have properly concluded that the designs were strikingly similar.

### c. Substantial Similarity

8        H&M LP alternatively argues that the jury was not given proper guidance to
9   assess whether the design on its garments were substantially similar to EH101.  It
10   identifies two supposed errors by the Court.  First, it contends its fashion expert,
11   Robin Lake, should have been permitted to testify to help the jury evaluate the
12   similarities and differences between the designs on H&M LP's garments and EH101.
13   Second, it argues that the Court improperly admitted a monochromatic version of
14   EH101, Exhibit 38, that it claims accentuated the similarities between the parties'
15   works.

16        The Court does not question H&M LP's insistence that Ms. Lake's testimony
17   would have been helpful.  But the Court excluded Ms. Lake because H&M LP failed
18   to properly disclose her as an expert witness, not because of the content of her
19   proposed testimony.  *See* Dkt. No. 181, at pp. 3-5.  H&M LP has not identified any
20   error in the Court's reasoning.

21        Nor has H&M LP convinced the Court that it erred in admitting a
22   monochromatic version of EH101.  As H&M LP concedes in its motion, H&M LP
23   failed to object to Exhibit 38 at the time of its admission.  Mem. P. & A., at p. 21 n.14
24   (Dkt. No. 247-1).  Moreover, H&M LP has not provided any support for its argument
25   that a jury can only consider the deposit copy of a copyrighted work in assessing
26   substantial similarity.  The one case it cites, *L.A. Printex*, explained that the jury could
27   consider "copies" of the design at issue in assessing substantial similarity.  676 F.3d at
28   850, n.3 (explaining that the jury "may consider fabric swatches of C30020 . . . so

long as . . . the fabric swatches are also 'copies' of C30020").  Exhibit 38 was a black and white copy of EH101, and the jury could properly examine it.

### 3.  Chinese Copyright Registration

H&M LP also argues that the Court improperly failed to instruct the jury about presumptions it claims come from a third party's Chinese copyright registration.  The Court granted judicial notice of a Chinese copyright registration for the "Xue Xu" design, which was obtained by a third party, Shaoxing County DOMO Apparel Co., Ltd. ("DOMO").  According to H&M LP, the Court should have instructed the jury that the Xue Xu design was presumed to be an original work because of the Chinese copyright registration.

The Court is aware of no authority holding that foreign copyrights convey a presumption of originality that would come with a United States registration.  International treaties do require United States courts to recognize foreign copyrights.  *See Creative Tech., Ltd. v. Aztech Sys. PTE, Ltd.*, 61 F.3d 696, 700 (9th Cir. 1995).  But recognition of a foreign copyright does not mean that a work registered in a different country must be presumed original.  Works copyrighted in the United States receive a presumption of originality because United States copyright law only permits original works to be copyrighted.  *See N. Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992) ("Originality is the indispensable prerequisite for copyrightability.").  Since works must be original to be validly copyrighted in the United States and registered copyrights are presumed valid, copyrighted works are presumptively original.  *See Swirsky v. Carey*, 376 F.3d 841, 851 (9th Cir. 2004), *as amended on denial of reh'g* (Aug. 24, 2004).  H&M LP's attempt to extend that presumption to a Chinese copyright fails because H&M LP provides no indication that works must be original to be copyrighted in China, or that China applies the same standards for assessing originality as does the United States.  Indeed, this court has declined to apply a presumption that would come from a United States registration to a foreign registration because of underlying differences in copyright law from country

9.

to country.  *See Lahiri v. Universal Music & Video Distribution, Inc.*, 513 F. Supp. 2d 1172, 1178 (C.D. Cal. 2007) (holding that an Indian copyright registration did not create a presumption of ownership like a United States registration would because "ownership is determined according to India's copyright law").  Without any showing that Chinese law applies the same standards for originality as United States law, the Chinese Xue Xu registration does not convey a presumption of originality.

Even if the Chinese copyright registration did create a presumption of originality, the Court still did not err in refusing to instruct the jury about such a presumption because H&M LP failed to establish a connection between the Chinese copyright registration and its own garments.  The Court took judicial notice of the Chinese Xue Xu registration, which established the registration's existence.  But H&M LP presented no testimony or documents whatsoever about the origin of the design on its own garments.  It certainly did not show that its design came from DOMO.  H&M LP's failure to establish any connection between the Chinese Xue Xu registration and its own design rendered the registration irrelevant.  Had the Court instructed the jury to presume that the work identified in the Chinese registration was original, the jury would have had no reason to apply that presumption to H&M LP's garments.

### 4.  United States Copyright Registration

In addition, H&M LP claims that the Court erred in excluding a United States copyright registration for the Xue Xu design.  As the Court explained in its order denying H&M LP's request for judicial notice of the United States Xue Xu copyright, Staci Riordan, H&M LP's trial counsel, obtained the registration on October 4, 2017, just two months before trial. Dkt. No. 186, at p. 3.  The United States registration, obtained well after the alleged acts of infringement and as part of a litigation strategy, was simply irrelevant to whether H&M LP infringed Unicolors' copyright.  *See id*, at pp. 3–4.  The Court did not err in excluding the United States copyright registration. / / /

10.

**5.  Willfulness**

Finally, H&M LP argues that the jury's willfulness finding was improper. H&M LP contends that the Court erred in placing a question about willfulness on the special verdict form.  It also claims that its infringement could not have been willful because it obtained the design at issue from DOMO.  Neither argument persuades the Court.

First, the question about willfulness on the special verdict form was, at worst, superfluous.  The jury specifically asked the Court in a jury note whether a finding of willfulness should affect its award of monetary compensation to Unicolors, and the Court answered that it did not.  Dkt. Nos. 221, 222.  The Court's instruction therefore rendered the willfulness question harmless.

Second, H&M LP's argument that it obtained the design on its infringing garments from DOMO, not by infringement, underscores that willfulness was a factual issue for the jury to decide.  While H&M LP argued that it obtained its design from DOMO, it produced no evidence to that effect.  To the contrary, the parties stipulated that H&M LP possessed infringing garments until October 2016, nearly six months after Unicolors sued it for copyright infringement.  Dkt. No. 182, at p. 4.  The jury properly concluded that H&M LP willfully infringed Unicolors' copyright.

* * *

For the foregoing reasons, the Court concludes that H&M LP is not entitled to judgment as a matter of law or a new trial with respect to the jury's finding that it was liable for copyright infringement.  Adequate evidence supported the jury's finding of liability, and H&M LP identifies no error that justifies a new trial.

**B. Damages**

H&M LP argues that the jury's damages award against it was excessive because the jury awarded profit disgorgement damages based on foreign sales for which H&M LP could not be responsible.  H&M LP also claims the jury's award of lost profit damages was not supported by sufficient evidence.

1               **1.  Profit Disgorgement Damages**

2          H&M LP does not dispute that it sold 11,999 skirts and jackets bearing the

3 design at issue in the United States.  *See* Supp. Decl. Staci Riordan, ¶ 4, Ex. Q (Dkt.

4 No. 251-2); Mem. P. & A., at p. 3.  However, the Court admitted evidence that a

5 separate corporation, H&M Hennes & Mauritz GBC AB ("H&M GBC"), shipped

6 84,000 infringing skirts and jackets to foreign countries.  Riordan Supp. Decl., ¶¶ 5, 6,

7 Exs. R, S.  H&M LP argues that, in awarding Unicolors $817,920 of profit

8 disgorgement damages, the jury must have based its damages calculation on H&M

9 GBC's shipments of infringing garments to other countries.  H&M LP claims that the

10 evidence was insufficient for the jury to award profit disgorgement damages against it

11 based on those foreign shipments.  As explained below, the Court agrees and holds

12 that Unicolors' profit disgorgement damages award must be reduced.

13          A successful plaintiff in a copyright infringement action may disgorge the

14 profits the defendant made from selling infringing goods.  17 U.S.C. § 504(a)(1).  "In

15 establishing the infringer's profits, the copyright owner is required to present proof

16 only of the infringer's gross revenue, and the infringer is required to prove his or her

17 deductible expenses and the elements of profit attributable to factors other than the

18 copyrighted work." 17 U.S.C. § 504(b).  Thus, determining the profits a plaintiff may

19 disgorge involves a multi-step process.  First, the plaintiff bears the burden of

20 establishing the defendant's gross revenue.  *Frank Music Corp. v. Metro-Goldwyn-*

21 *Mayer, Inc.*, 772 F.2d 505, 514 (9th Cir. 1985).  The burden then shifts to the

22 defendant to establish the expenses to deduct from gross revenue to arrive at profit.

23 *Id.*  The defendant can further reduce its liability by establishing that a portion of its

24 profit was not attributable to infringing activity.  *See Polar Bear Prods., Inc. v. Timex*

25 *Corp.*, 384 F.3d 700, 711 (9th Cir. 2004), *as amended on denial of reh'g and reh'g en*

26 *banc* (Oct. 25, 2004).

27               **a.  Gross Revenue from Shipments to the United States**

28          To establish H&M LP's sales of infringing goods, Unicolors relied on two types

of documents.  First, it introduced a spreadsheet generated by H&M LP, which the Court admitted as Exhibit 28.  Riordan Supp. Decl., Ex. Q.  The spreadsheet indicated that H&M LP sold 6,535 pieces of an infringing jacket at an average net sale price of $20.91 and 5,464 pieces of an infringing skirt at an average net sale price of $20.32.  *Id*.  Added together, the spreadsheet established that H&M LP earned $247,675.33 in gross revenue from sales of infringing products.

Second, Unicolors relied on packing lists from H&M GBC.  The packing lists, which were introduced as Exhibits 29, 30, and 31, indicated that H&M GBC shipped 96,000 garments from its office in Stockholm, Sweden.  *See* Riordan Supp. Decl., ¶¶ 5, 6, 7, Exs. R, S, T.  H&M GBC sent about 12,000 of those garments to the United States.  As evidenced by the spreadsheet admitted as Exhibit 28, H&M LP sold those garments.  H&M GBC shipped the remaining 84,000 garments to other countries.  During closing arguments, Unicolors argued that the jury should award it profit disgorgement damages based on all 96,000 garments, not just those sent to the United States.  Dec. 7, 2017 Trial Tr. 70:3–72:1 (Dkt. No. 239).

### b.  Damages from Foreign Shipments

Because the evidence established that H&M LP made, at most, $247,675.33 in gross revenue from sales of infringing garments that H&M GBC sent to the United States, the jury must have awarded profit disgorgement damages based on H&M GBC's shipments to foreign countries.  A copyright owner can recover for sales of infringing goods in two situations.  First, it can recover for the defendant's direct infringement.  Second, in some circumstances, it can recover based on the defendant's involvement in a third party's infringement.  *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (explaining that "the only practical alternative" to enforcing rights against direct infringers is "to go against the distributor . . . for secondary liability on a theory of contributory or vicarious infringement").

### i.    Direct Infringement

To establish direct infringement, a copyright owner must prove the traditional

13.

1    elements of ownership and copying, but must also satisfy a third element—volitional

2    conduct.  *Perfect 10, Inc. v. Giganews, Inc.,* 847 F.3d 657, 666 (9th Cir. 2017).  To

3    prove volitional conduct, the copyright owner must show that the defendant's conduct

4    directly caused the infringement.  *Id.*  "[M]ere authorization of a third party's

5    infringing acts does not constitute direct copyright infringement on the part of the

6    defendant."  *Paramount Pictures Corp. v. Int'l Media Films Inc.*, No. CV 11–09112

7    SJO (AJWx), 2013 WL 3215189, at *13 (C.D. Cal. June 12, 2013).

8             While Unicolors presented evidence to establish that H&M LP itself sold

9    infringing garments in the United States, it did not introduce evidence to prove that

10    H&M LP committed direct infringement with respect to H&M GBC's shipments to

11    foreign countries.  At trial, the jury heard testimony from Chelsea Wharton about the

12    process by which H&M GBC distributed garments.  According to Ms. Wharton,

13    H&M GBC operated a buying office in Stockholm, Sweden.  Dec. 7, 2017 Trial Tr.

14    70:6–19 (C. Wharton) (Dkt. No. 235).  The buying office determined which garments

15    to purchase and then allocated them to each global market.  *Id.* at 70:21–71:15.

16    Unicolors did not offer any evidence or testimony to dispute Ms. Wharton's

17    description of the that process.  The uncontroverted evidence at trial therefore

18    indicated that H&M GBC purchased infringing garments from third parties and

19    allocated them to different markets.  This evidence may have established that H&M

20    GBC infringed Unicolors' copyright by distributing infringing garments.  But H&M

21    GBC is not the defendant in this case, H&M LP is.  Unlike the garments H&M GBC

22    shipped to the United States, which H&M LP itself sold, Unicolors failed to introduce

23    evidence that H&M LP sold, distributed, or produced the garments that H&M GBC

24    shipped to other countries.  Accordingly, Unicolors did not, as a matter of law,

25    establish that H&M LP directly infringed its copyright with respect to H&M GBC's

26    foreign shipments.

27                            **ii.     Secondary Liability**

28             "The Copyright Act does not expressly render anyone liable for infringement

14.

committed by another." *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 434 (1984).  Courts have established two general exceptions to this rule, however. *Grokster*, 545 U.S. at 930 (2005).  One such exception is for contributory infringement, which occurs when the defendant "intentionally induc[es] or encourage[es] direct infringement."  *Id*.  Another is for vicarious infringement, which applies where the defendant "profit[s] from direct infringement while declining to exercise a right to stop or limit it."  *Id*.  Unicolors does not argue that contributory infringement applies in this case.  But Unicolors did request an instruction on vicarious infringement, and the Court gave the instruction.  *See* Dkt. Nos. 165, 212.

To establish liability for vicarious infringement, a plaintiff must establish "(1) the right and ability to supervise the infringing conduct, and (2) a direct financial interest in the infringing activity." *Giganews*, 847 F.3d at 673.  Unicolors failed to present evidence to satisfy either element at trial.

### (1) Control

"A defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Courts have found control where the defendant had the right to monitor and halt the direct infringer's activities. *Compare Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996) (holding that the defendant's broad contracts with its vendors gave it the right and ability to stop them from selling counterfeit recordings on its premises) *with Unicolors, Inc. v. NB Brother Corp*, No. CV 16-02267-MWF (JPRx), 2017 WL 4402287, *5 (2017) (holding that the plaintiff could not establish vicarious infringement where no evidence showed that the defendant could control its Chinese vendor).  A defendant's ownership interest in a separate corporate entity cannot, on its own, establish liability for the separate entity's infringement. *Frank Music*, 772 F.2d at 519–20 (explaining that "[a] parent corporation cannot be held liable for the infringing actions of its subsidiary unless there is a substantial and continuing

1    connection between the two with respect to the infringing acts").

2        Unicolors simply made no showing at trial that H&M LP could control H&M

3    GBC's activities.  It failed to introduce any evidence about the relationship between

4    H&M LP and H&M GBC.  The evidence certainly did not suggest that H&M LP

5    could stop H&M GBC from selling infringing garments.  And, even if the jury

6    assumed that the H&M LP and H&M GBC shared an owner, that relationship would

7    be insufficient to establish that H&M LP could control H&M GBC's infringing

8    activities.  Unicolors therefore failed, as a matter of law, to satisfy the control element

9    of a vicarious infringement claim.

10                          **(2) Financial Benefit**

11        Unicolors also failed to establish that H&M LP had a direct financial interest in

12    H&M GBC's infringing activities.  A defendant benefits financially from another's

13    infringement when "there is a causal relationship between the infringing activity and

14    any financial benefit a defendant reaps, regardless of how substantial the benefit is in

15    proportion to a defendant's overall profits."  *Giganews*, 847 F.3d at 673.  A plaintiff

16    must establish that the defendant benefitted from the particular infringement at issue,

17    rather than infringement generally.  *Id*. at 674 (holding that evidence that some of the

18    defendant's subscribers joined its service to access infringing material was insufficient

19    to establish that the defendant benefitted from the specific infringement at issue).

20        Here again, Unicolors failed to assert any evidence that H&M LP benefitted

21    from H&M GBC's actions.  It did not establish that H&M LP collected any revenue

22    from H&M GBC's shipments of infringing products.  Nor did Unicolors assert

23    evidence that H&M GBC's activities drew customers to H&M LP's stores.

24    Accordingly, Unicolors did not satisfy the financial benefit element of a vicarious

25    infringement claim.

26        Because the evidence at trial could not support a finding that Unicolors

27    controlled or financially benefitted from H&M GBC's alleged infringement,

28    Unicolors failed to establish vicarious infringement at trial.  H&M LP therefore

cannot recover damages based on H&M GBC's infringement of its copyright.

### iii.    Extraterritorial Liability

Even if H&M LP did infringe Unicolors' copyright through H&M GBC's shipments to foreign countries, Unicolors could not recover for that infringement.  The Copyright Act only applies in the United States and therefore does not extend to extraterritorial acts of infringement.  *Subafilms, Ltd. v. MGM–Pathe Communications Co.*, 24 F.3d 1088, 1094 (9th Cir.1994) (en banc).  However, one exception exists to this rule.  When a complete act of infringement in the United States enables further infringement abroad, a copyright owner can recover for the defendant's foreign exploitation of the copyrighted work.  *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.* (*Reuters III*), 149 F.3d 987, 992 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc* (Aug. 25, 1998).  The *Reuters III* exception to the rule against extraterritoriality is a narrow one.  *Los Angeles News Serv. v. Reuters Television Int'l (USA) Ltd.*, 340 F.3d 926, 931 (9th Cir. 2003), *as amended on denial of reh'g* (Oct. 7, 2003) ("The import of such principles counsel a narrow application of the adoption in *Reuters III* of the *Sheldon* exception to the general rule.").  Courts therefore decline to impose damages for foreign acts of infringement unless a "predicate act of domestic infringement" allowed for the foreign infringement.  *See Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1131, n.38 (C.D. Cal. 2009) (denying a motion for a preliminary injunction where the plaintiff failed to establish that the defendant itself sold infringing products in the United States).  Even completed acts of infringement in the United States do not convey liability for foreign infringement where the domestic infringement does not enable or entice the foreign infringement.  *Compare Rundquist v. Vapiano SE*, 798 F. Supp. 2d 102, 124 (D.D.C. 2011) (holding that the plaintiff could not recover for foreign infringement of a work the defendant also reproduced in the United States because "[i]n order to have enticed the foreign [infringement], the [defendant's American infringement] must necessarily have come first, but this allegation is missing from the Complaint") *with In re*

17.

1   *Outsidewall Tire Litig.*, No. 1:09cv1217, 2010 WL 11474982, *6–7 (E.D. Va. Sept.

2   17, 2010) (declining to dismiss claims for copyright infringement that occurred

3   outside the United States where the infringed product's blueprints were first illegally

4   reproduced and modified inside the United States).

5   　　　Even if H&M LP received H&M GBC's foreign shipments of garments and

6   sold them in other countries, Unicolors has not established a sufficient predicate act of

7   infringement in the United States to make H&M LP liable for those sales. While

8   H&M LP sold infringing garments in the United States, no evidence suggests that

9   those sales enabled or enticed foreign sales. Instead, the evidence at trial established

10  that H&M GBC purchased garments from third parties and then allocated them to

11  different global markets. H&M LP received the garments and ultimately sold them to

12  consumers. But, as Ms. Wharton testified, H&M LP had no role in the production

13  process. Dec. 7, 2017 Trial Tr. 84:10–17 (C. Wharton) (Dkt. No. 235). Because

14  H&M LP's infringement occurred at the end of the distribution process, Unicolors

15  could not establish that its American infringement occurred before the alleged foreign

16  acts of infringement. H&M LP's sales of infringing garments in the United States

17  made it no easier for it to sell the garments in other countries. Thus, even assuming

18  that H&M LP itself sold infringing garments that H&M GBC shipped to other

19  countries, Unicolors has not established a basis for it to recover profit disgorgement

20  damages based on those sales.[1]

21  　　　In hopes of avoiding *Subafilm*'s rule against extraterritoriality altogether,

22

23  [1] Unicolors' notice of supplemental authority does not alter the Court's conclusion.
    Dkt. No. 260. In the case Unicolors submitted, *WesternGeco LLC v. ION*

24  *Geophysical Corp.*, 138 S.Ct. 2129, 2134-2136 (June 22, 2018), the Supreme Court
    held that a patent holder could recover foreign lost profits where the defendant

25  manufactured components of an infringing system in the United States but assembled
    the system abroad. The statute at issue in *WesternGeco* prohibited the exportation of

26  components to be combined in foreign countries in a way that would infringe an
    American patent. *Id*. at 2135 (citing 35 U.S.C. § 271(f)(2)). Thus, unlike here, the

27  defendant's act in the United States, which a statute specifically proscribed, allowed

28  for the foreign infringement to occur.

Unicolors alternatively argues that the jury could have presumed that the garments H&M GBC shipped to foreign countries were ultimately sold in the United States. Opp'n, at p. 9.  Unicolors essentially contends that, because H&M LP did not establish that the garments were sold anywhere other than the United States, the jury could assume that they were sold in H&M LP's United States stores.  Opp'n, at pp. 8-9.  But, as the plaintiff, Unicolors bore the burden of establishing H&M LP's sales, and even the jury's verdict does not reverse that burden of proof.  The absence of evidence that H&M LP sold the garments that H&M GBC shipped to other countries in the United States means that Unicolors cannot recover profit disgorgement damages based on those shipments.  Thus, the jury's profit disgorgement damages award was excessive.

## 2.  Lost Profits

H&M LP also challenges the jury's $28,800 lost profits award.  It argues that the evidence did not support the jury's calculation.  The Court agrees and reduces the jury's lost profits award to $18,534.

A victim of copyright infringement may recover both profit disgorgement and actual damages.  *Polar Bear*, 348 F.3d at 707–8.  One permissible way to calculate actual damages is to tabulate the plaintiff's lost profits from lost sales of its products. *See JBJ Fabrics, Inc. v. Mark Indus., Inc.*, No. CV 86-4881 FFF, 1987 WL 47381, at *6 (C.D. Cal. Nov. 5, 1987) (calculating lost profit damages by multiplying the yards of infringing fabric the defendant sold by the plaintiff's profit margin per yard of fabric it sold).  An award of actual damages must be non-speculative and supported by evidence.  *Polar Bear*, 348 F.3d at 708.

Here, Mr. Pazirandeh testified that Unicolors would have made about $2 per jacket and up to $1 per skirt had H&M LP purchased the fabric for its garments from Unicolors.  Decl. Scott Burroughs, ¶ 2, Ex. 1, Trial Tr. 67:12–68:03 (Dkt. No. 250-1). Because the evidence at trial established that H&M LP sold 6,535 units of the jacket and 5,464 units of the skirt, the maximum amount of lost profits Unicolors incurred as

a result of H&M LP's infringement was $18,534.

### 3. Remittitur Calculation

"A remittitur must reflect the maximum amount sustainable by the proof." *Oracle*, 765 F.3d at 1094.  By reducing excessive damages awards to the maximum sustainable amount, courts avoid substituting their judgment for that of the jury.  *D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982).

The maximum profit disgorgement damages award the evidence can support in this case is $247,675.33.  That figure represents H&M LP's gross revenue from sales of infringing garments in the United States.  While a jury may reduce an infringing defendant's gross revenue by its expenses, it is the defendant's burden to produce evidence supporting such a reduction.  *Frank Music*, 772 F.2d at 514.  Here, the only evidence H&M LP asserted of its expenses was a spreadsheet which attributed $15.98 in costs to each jacket sold and $8.21 in costs to each skirt sold.  Riordan Supp. Decl., Ex. Q.  It did not present any evidence about the underlying costs that went into that calculation.  Without evidence of how H&M LP calculated its expenses, a reasonable jury could decline to credit H&M LP's expense calculation.  Accordingly, a reasonable jury could award up to $247,675.33 in profit disgorgement damages.

As explained in the preceding section, the evidence only supported an $18,534 damages award for lost profits.  Combining the maximum sustainable profit disgorgement damages and the maximum sustainable lost profits damages, the maximum damages the jury could have awarded amounted to $266,209.33.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** H&M LP's motion for judgment as a matter of law and **GRANTS IN PART** H&M LP's motion for a new trial.  The Court conditionally grants a new trial on the issue of damages, subject to Unicolors accepting a remittitur of damages to $266,209.33 within 14 days of the issuance of this order.

**IT IS SO ORDERED.**

Dated: August 01, 2018

_____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

21.